**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
Telephone: 503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
Telephone: 503-726-5975
VICKERS PLASS LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035

      Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| RACHEL G. DAMIANO and KATIE S. MEDART,<br><br>                                      Plaintiffs,<br>v.<br>GRANTS PASS SCHOOL DISTRICT 7, an Oregon public body; THE MEMBERS OF THE BOARD OF EDUCATION OF GRANTS PASS SCHOOL DISTRICT 7 – Scott Nelson, Cliff Kuhlman, Gary Richardson, Debbie Brownell, Cassie Wilkins, Brian Delagrange, and Casey Durbin – in their official and personal capacities; KIRK T. KOLB, Superintendent, Grants Pass School District 7, in his official and personal capacity; and THOMAS M. BLANCHARD, Principal, North Middle School, Grants Pass School District y, in his official and personal capacity,<br>                                      Defendants. | Case No. 1:21-cv-00859-CL<br><br>DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>*Oral Argument Requested* |

Defendants Grants Pass School District 7 ("District"), Members of the Board of Education of Grants Pass School District 7, Kirk T. Kolb, and Thomas Blanchard ("defendants") respectfully submit the within supplemental response in opposition to plaintiffs' motion for a temporary restraining order. Defendants' supplemental response is supported by the declaration

of Karen M. Vickers, together with the attached exhibits.

## Introduction

Plaintiffs' employment was terminated last night (July 15, 2021) at a Grants Pass School District school board meeting. Plaintiffs' request for a restraining order should be denied because it is now moot. Additionally, plaintiffs are not entitled to a temporary restraining order reinstating them to their positions because, among other reasons, they have not shown irreparable harm or likelihood of success on the merits.

## Supplemental Factual Background

Plaintiffs filed the within lawsuit on June 7, 2021 (Dkt. 1, Complaint) and motion for temporary restraining order on June 22, 2021 (Dkt. 17, TRO). At the time of those filings, plaintiffs' employment had not yet been terminated. Yesterday evening, during open sessions in front of the Grants Pass school board ("Board"), the Board voted to terminate plaintiffs' employment.

Prior to their terminations, the District conducted extensive investigations into issues related to plaintiffs. Following those investigations, Sherry Ely, Chief Finance and Operations Officer recommended that the Superintendent Kirk Kolb terminate plaintiffs' employment based on numerous policy violations including: using of district facilities, equipment or supplies in connection with a political campaign, which both plaintiffs admitted occurred; using time during the work day for political campaign purposes; failing to clarify that their viewpoints were personal and not those of the District; and using social media in a manner that disrupted the

District. Plaintiff Medart also posted confidential information about a transgender student on social media in support of her political campaign in violation of District policy and federal law. Vickers decl. Exs. 1 (Ely Letter re Damiano) & 2 (Ely Letter re Medart). Kolb agreed and recommended plaintiffs' terminations to the Board. Vickers decl Exs. 3 (Kolb Letter re Damiano) & 4 (Kolb Letter re Medart).

The Board then considered the termination recommendations. The Board had the opportunity to consider the investigations, recommendations and documents submitted by plaintiffs. Both plaintiffs were given a hearing in front of the Board. The Board considered the documentation and argument, and then voted on the termination recommendations. The vote was 4-3 in favor of termination of both plaintiffs.

## Argument

### I.   Plaintiffs' motion for a temporary restraining order is moot.

Plaintiffs' motion for a temporary restraining order is now moot. Plaintiffs sought a TRO reinstating them to their previous positions during the time they were on administrative leave. Plaintiffs have now been terminated from their positions.

### II.   The motion should be denied because plaintiffs have not shown irreparable harm.

Plaintiffs have not shown that the grant of a temporary restraining order will prevent irreparable harm. Plaintiffs have been terminated. While they wait for trial, plaintiffs' First Amendment rights are not in danger because the District has no power over them. Plaintiffs can speak on any matter they choose in any forum.

In support of their argument regarding irreparable harm, plaintiffs rely on *Elrod v. Burns*. But *Elrod* is inapposite to the factual scenario presented here, as demonstrated by cases decided after *Elrod*.

*American Postal Workers Union, AFL-CIO v. U.S. Postal Services,* 766 F.2d 715 (2d Cir. 1985), which post-dates *Elrod* is illustrative. In that case, an employee wrote to a local customer and told the customer that mail was being delayed because of announced job cuts. The postal service discharged the employee. The employee's union moved for a preliminary injunction seeking a stay of the discharge. The district court granted the injunction. The district court's ruling was reversed by the Second Circuit on the ground that plaintiff had failed to show irreparable harm. Specifically, the court rejected union's argument that *Elrod* established a presumption of irreparable harm in First Amendment retaliation claims. *See id.* at 722. Rather, the Second Circuit held that a party seeking injunction relief must show that a party's First Amendment interests were "'threatened or in fact being impaired at the time relief [is] sought.'" *See id.* (quoting *Elrod,* 427 U.S. at 373); *see also Bruce v. Worcester Regional Transit Authority,* 319 F. Supp. 3d 544, 547 (D. Mass. 2018) (denying preliminary injunction in First Amendment retaliation claim because if plaintiff prevails "he will be entitled to monetary compensation including back pay and reinstatement, and therefore, can be made whole.").

Plaintiffs have not cited to a single case holding that a terminated plaintiff advancing a First Amendment retaliation theory in an employment case is entitled to reinstatement pending the outcome of their civil case. Plaintiffs are not so entitled here.

The reason of *American Postal Workers* governs. Plaintiffs are free to exercise their First Amendment rights. They are not now employed by the District, so the District has no power to

sanction them.  Their First Amendment rights are not impaired in any way.  If plaintiffs are successful in this litigation, they can be made whole by money damages and potentially other relief after a full trial on the merits.  *See Remlinger v. State of Nevada.,* 896 F. Supp. 1012, 1015 (D. Nevada 1995) (no irreparable injury in section 1983 employment case where legal remedies of back pay and reinstatement are available).  Plaintiffs have failed to establish irreparable harm, and their motion for a temporary restraining order must be denied.  *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).

### III.   Plaintiffs have failed to establish that they are likely to succeed on the merits.

Plaintiffs motion for TRO should also be denied because plaintiffs have failed to establish that they are likely to succeed on the merits of their First Amendment claim.

First, despite their pleadings herein, plaintiffs are well aware that the District's decision to recommend their terminations was not solely a matter of their participation I Resolve campaign.  Rather, as set forth in the District's initial response and above, the District found that plaintiffs violated policies on the use of District property and work time in creating and promoting their I Resolve campaign.  These violations are *admitted* by plaintiffs.  Furthermore, plaintiff Medart violated District policy and federal law by revealing confidential information about a transgender student in service of her political campaign which is clearly designed to limit the rights of transgender students.

None of the above reasons for termination implicate plaintiffs' First Amendment rights.  Plaintiffs argue that these admitted violations were de minimis, but they do not argue that the policy violations implicate their First Amendment rights.  Thus, Plaintiffs have not shown that

they are likely to succeed on the merits: the Board had before it several grounds for termination, and plaintiffs have done nothing to establish that the Board members relied on the reason plaintiffs' claim violated the First Amendment.

Second, the District has established that the plaintiffs' speech caused disruption. A government's interest in regulating he speech of its employees differs markedly from its interest in regulating the speech of ordinary citizens. *Pickering v. Board of Educ.,* 391 U.S. 563 (1968). Public employers are allowed to prohibit otherwise protected speech where the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees, outweighs" the employee's right to comment on matters of public concern. *Id.* at 568.

To analyze whether the government's administrative interests outweigh the plaintiff's right to engage in protected speech, courts "examine disruption resulting both from the act of speaking and from the content of the speech." *Clairmont v. South Mental Health,* 632 F.3d 1091, 11107 (9th Cir. 2011). The government interests "include promoting efficiency and integrity in the discharge of official duties and maintaining proper discipline in the public service." *Id.*

The analysis conducted by courts looks to whether plaintiff's speech "impeded his ability to perform his job duties." *Id.* Along the same lines, courts also consider the extent that plaintiff's speech interfered with his workplace relationships. *Id.* Interference with workplace relationships can be shown via "actual, material and substantial disruption, or reasonable predictions of disruptions in the workplace." *Id.* Courts are also more likely to accept a government employer's prediction of future disruption if some disruption has already occurred.

*See e.g., Munroe v. Cent. Bucks Sch. Dist.,* 805 F.3d 454, 477-78 (3d Cir. 2015) (relying on complaints from parents whose children were criticized in teacher's blog with demands for their children to be placed in a different classroom).

K-12 public school teachers occupy a unique position of in our society. *Munroe,* 805 F.3d at 475. Because of their unique position, the reaction of students and parents must be taken into consideration when applying *Pickering. Id.* at 475-76. It is simply not possible to expect or require a middle school student to be forced into a classroom environment where that student's teacher or administrator has expressed hostility and disgust about core aspect of a student's identity as a person. The District concluded that plaintiffs' speech caused a disruption or was likely to do so. The Court should not reconsider that conclusion on a temporary, expedited basis.

## IV. The balance of equities and consideration of the public interest favor defendants.

If plaintiff can establish likelihood of success and show a likelihood of irreparable harm, the final two factors – harm to the defendant and public interest – substantially overlap and are considered together when a public entity is the opposing party. *Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014). Plaintiffs are not entitled to preliminary relief because, despite any claimed harm, a balance of harms at stake and consideration of the public interest weighs in favor of the district and against granting the extraordinary relief requested by these plaintiffs.

Administrators in the Grants Pass School District and its Board are forced to make difficult decisions each day which impact nearly 6,000 students. They attempt to balance the constitutional rights of their employees and students with their indisputable duty to create an

atmosphere that is safe and conducive to learning for all students, including students whose biological sex does not match their gender identity.  If teachers could obtain preliminary court orders reversing District decisions in complex, fact-intensive situations such as this one, where plaintiffs have admitted to policy violations unrelated to First Amendment concerns, and without a clear demonstration of liability it would harm the school district by impeding the ability of administrators to make decisions and maintain a school environment conducive to achievement of educational objectives.

## Conclusion

For the reasons given above, defendants respectfully request that plaintiffs' motion be denied.

DATED: July 16, 2021.

VICKERS PLASS LLC

*s/ Karen M. Vickers*
**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
   Of Attorneys for Defendants