

**Grants Pass School District No. 7**

725 NE Dean Drive, Grants Pass, OR 97526 · Phone: (541) 474-5703
www.grantspass.k12.or.us · Fax: (541) 474-5705

OFFICE of BUSINESS SERVICES

June 4, 2021
Katie Medart


RE:  Investigation Findings and Recommendation for Termination

Dear Katie,

An investigation was conducted by Bill Landis at the request of the District regarding the allegations that you violated several District Policies – the findings of which you received a copy of this morning and are included below.

"**ALLEGATION #1:** In March/April of 2021, it is alleged that Grants Pass School District 7 North Middle School Teacher Katie Medart was involved in a campaign of a political nature non-sanctioned by Grants Pass School District 7 where Ms. Medart is alleged to have:

A. Used District facilities, equipment or supplies in connection with the political campaign. **"SUSTAINED"**- Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"No employee will use district facilities, equipment or supplies in connection with political campaigning, nor will any employee use any time during the working day for campaign purposes."* Grants Pass School District 7 policy IIBGA-AR "Electronic Communications System Acceptable Use Regulation" (Exhibit 7E) states that *"Attempts to use the District network for Transmission of any materials regarding political campaigns is strictly prohibited."* The stated purpose of the "I Resolve" campaign was to address gender identity policies as was stated in their video and message. The "I Resolve" campaign stated in the video that it was specifically targeting the Equality Act, Oregon Senate Bill 52, and other legislation that was in the process of being voted on, developed, or proposed in legislative bodies at the Federal, State, and local levels as the "I Resolve" video explains. In the video, Ms. Medart and Ms. Damiano ask that viewers reach out to contact Senators where the next vote is scheduled and attend an ODE meeting that was scheduled for April 15th, 2021 in order to have their voices heard lobbying for support of the "I Resolve" resolutions that would modify or change the pending legislation as it had been written.

Ms. Medart by her own admission used District 7 computers, email, school property, and Google Docs to share or communicate regarding the "I Resolve campaign with colleagues, staff, and persons inside and outside of School District 7. This was supported by Exhibits provided regarding email use under Exhibit 4 which were some of the emails provided by the District 7 IT Department. While Ms. Medart did not like referring to "I Resolve" as a political campaign, her efforts both in the video regarding legislation and through the use of District 7 email and face to face contacts on campus to gain support for the "I Resolve" resolutions were determined to be political campaigning which occurred on District 7 School grounds. The goal of "I Resolve" was to influence legislators regarding pending policies and legislation with their own resolution that would define who could use what bathrooms based on one's anatomy, legislate the use of names and

*Building Bridges to the Future*

**Vickers Supp Declaration
Exhibit 2 Page 1 of 5**

pronouns for gender identity students, and require parents be involved in a student's gender identity journey. It should be noted that this allegation would not have been sustained had Ms. Medart have chosen to not use District 7 facilities, email, equipment, or supplies for her "I Resolve" campaign.

B. Used time during her working day for political campaign purposes. **"SUSTAINED"-** Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"No employee will use district facilities, equipment or supplies in connection with political campaigning, **nor will any employee use any time during the working day for campaign purposes.**"* As stated under Allegation 1A above, the "I Resolve" campaign was determined to be a political campaign. Time stamps on emails shown in Exhibit 4 as well as Ms. Medart's admission that she used time during her workday to communicate regarding "I Resolve" both in emails and face to face communications with other District 7 staff and persons outside of District 7. Ms. Medart stated that the time was minimal however besides email and face to face communications, she also admitted using District 7 computers to work on "I Resolve." Without a forensic computer analysis there is no way to quantify the actual time. The policy does not require a certain amount of time in order to violate it, it states: "nor will any employee use any time during the working day for campaign purposes" which did occur on more than one occasion. Had Ms. Medart not utilized time during her workday for the "I Resolve" campaign this would not have been a violation.

C. Failed to designate that the viewpoints she represented on the issues involved in the political campaign, were her personal viewpoints and not that of District 7. **"SUSTAINED"-** Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"On all controversial issues, employees must designate that the viewpoints they represent on the issues are personal viewpoints and are not to be interpreted as the district's official viewpoint."* As stated under Allegation 1A, the "I Resolve" campaign was determined to be a political campaign. In the "I Resolve" video, Ms. Medart identifies herself by stating: *"My name is Katie. And my experience with youth is that I have been teaching for the last 10 years. I am currently teaching at a middle school in Southern Oregon, and prior to that for eight years, I was a science instructor for college and then some high school science teaching experience as well. I've been a coach, multiple sports. And then probably my greatest honor of working with youth is that I have two of my own sons."*

Ms. Medart doesn't introduce herself as a private citizen but rather a Southern Oregon Middle School Teacher giving her first name. While she did not say Grants Pass District 7, She at no time in the video states that the views expressed are that of her own and not that of District 7 or any similar type of statement. Ms. Damiano identified herself similarly by saying: *Hi, I'm Rachel and I am an administrator assistant principal in Southern Oregon at the middle school level. I've also worked at the high school level, was previously a math teacher, and I've been working with youth for over a decade now in various roles in education. And then in... as a coach as well.* A simple internet search using "Rachel southern Oregon middle school assistant principal" finds an article identifying Rachel Damiano and her full name, North Middle School, District 7, when she was hired in August of 2020. https://spotonoregon.com/southern-oregon/517035/gp-district-7-welcomes-damiano-as-new-vice.html. This would have then also led someone to easily determine Ms. Medart's identity again since she identified herself by her title. Additionally, Ms. Medart used District 7 email for communications for "I Resolve" to persons inside of District 7 and outside identifying herself as associated with School District 7 with no disclaimer. The media coverage (Exhibits 5A-5E) shows how District 7 was intertwined with Ms. Medart and the "I Resolve" campaign. There media coverage had no statements by Ms. Medart or Ms. Damiano that made it clear that the "I Resolve" campaign was not affiliated with District 7.

Ms. Medart did tell me in my interview with her on May 13th, 2021 that there was a disclaimer on the video associated with YouTube. I did find a disclaimer if a viewer used a drop-down box prior to playing the video. This however was not initially with the video as she admitted in her interview with Dan Huber-Kantola on April 6th, 2021 when she told him that it had been added later and the video itself has nothing a viewer would know isn't just Ms. Medart's view. In the opening statements of the video, Ms. Medart can be heard saying: "I Resolve" and "We Resolve." The fact that there is no differentiation of whether the views or resolution expressed is only hers can be complicated by the word "We" and who else she is referring to. Ms. Medart's story of one of her students coming forward within a few days of the "I Resolve" video being published to ask about the video and wondering if she was homophobic also showed how "I Resolve" was associated with her position as a District 7 teacher. The amount of email complaints, complaints form District 7 employees, and publicity associated shorty after the video and website were published to social media and the internet was representative of how controversial the "I Resolve" proposals and campaign were based upon the responses of many. Had Ms. Medart been clear that the expressed views in the "I Resolve" video and campaign were not those of District 7 then this would not have been a violation of District 7 policy.

D. Used social media and public websites in such a manner that it disrupted the school environment. **"SUSTAINED"** – Grants Pass School District 7 policy GCAB "Personal Electronic Devices and Social Media-Staff (Exhibit 7C) states that *"Staff members, while on duty and off duty, will treat fellow employees, students and the public with respect while posting on social media websites, etc., in order to prevent substantial disruption in school."* It is clear from the complaints received that the "I Resolve" video posted on YouTube and Facebook, and "I Resolve website created a substantial disruption in school which included student protests, staff complaints, citizen complaints, division among the staff, and was interpreted by some who would be affected by the "I Resolve" resolution as disrespectful.

E. Posted confidential information about a student on social media and a public website. **"SUSTAINED"**- Grants Pass School District 7 policy GCAB "Personal Electronic Devices and Social Media-Staff (Exhibit 7C) states that *"Staff members, while on duty and off duty, will utilize social media websites, public websites, and blogs: in a professional manner by not posting confidential information about students, staff or district business."* In the "I Resolve" video which was posted on social media and a public website, Ms. Medart disclosed an incident ▓▓▓ Ms. Medart was ▓▓▓ Ms. Medart's disclosure in the "I Resolve" video ▓▓▓ This was corroborated by Principal Tommy Blanchard ▓▓▓ Ms. Medart in my in my interview recanted the story as truthful and gave unclear responses to my questions stating that in looking back it was hypothetical although she seemed to indicate she believed the story as well. ▓▓▓ Ms. Medart said occurred ▓▓▓ Ms. Medart said it had occurred. ▓▓▓ viewing the "I Resolve" video as did happen with ▓▓▓, would have ▓▓▓ Ms. Medart spoke of even if she now claimed it was hypothetical.

F. Created a "bias incident" where her actions as a District employee with regards to the political campaign/movement involved behavior or language which was derogatory and directed at those persons and or students "sexual orientation." **"NOT SUSTAINED"** – Grants Pass School District 7 policy "ACB" (Exhibit 7B) states that *"Bias Incident" means a person's hostile expression of animus toward another person or*

*group of person's, relating to the other person's or group's distinguished, or perceived to be distinguished, race, color, religion, sex, gender identity, sexual orientation, disability or national origin"* It is not clear if Ms. Medart's "I Resolve" campaign was "a hostile expression of animus toward those who use a different gender identity. The "I Resolve" campaign is an attempt to change legislation and policies affecting gender identity. Individuals may perceive her actions as biased which is understandable. However, it is not clear based upon the language of the listed policy that her actions constituted a "bias incident" as there weren't enough facts to positively conclude if the allegation was unfounded or in fact was sustained and did occur.

**Allegation #2**: Between October 2020 and March 2021, Katie Medart discriminated against ▮ who is transgender **"NOT SUSTAINED"** – Grants Pass School District 7 policy "ACB" Nondiscrimination (Exhibit 7A) states that the district prohibits discrimination and harassment on any basis protected by law, including sexual orientation which the policy defines as including an individual's actual or perceived gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth ▮ alleges that he was discriminated against by Ms. Medart when she refused to use ▮ new name and asked ▮ not to use ▮ name with her class, had ▮ work remotely rather than in her class as a ▮ making it difficult to do ▮ job, and removed ▮ status in the school network as a ▮ which reduced ▮ ability to access information to help students. The emails I located where ▮ and Ms. Medart communicated between October 2020 and April 2021 (Exhibit 9) show that she did call ▮ in several of those emails making it difficult to prove that she didn't want ▮ using that name.

Ms. Medart had another ▮ who also was also working remotely. Ms. Medart told me that it was ▮ idea to work remotely which she thought was a good idea. When I interviewed ▮ ▮ stated that was not correct and thought it was odd Ms. Medart did not want ▮ assisting students in her classroom. Although ▮ thought this was discriminatory, I was unable to determine if it was due to ▮ being transgender since ▮ also was asked to work remotely. ▮ belief that Ms. Medart had ▮ status changed regarding the school network was not substantiated as ▮ was able to have Mr. Blanchard change ▮ status back and Ms. Medart denied she had changed ▮ status. Ms. Medart's involvement in the "I Resolve" campaign which proposed changes to legislation and policies although offensive to ▮ and others, were not discriminatory as there were no defined discriminatory conduct identified as described by District 7 policy.

**Allegation #3**: On or about March 2021, Ms. Medart created a hostile work environment for ▮ ▮ **"UNFOUNDED"** - ▮ alleged that Ms. Medarts created a hostile work environment when she spread rumors that ▮ and another teacher had discouraged Principal Tommy Blanchard from allowing Ms. Medarts to attend the student ▮ meeting on campus ▮ stated that she knew Ms. Medarts told another teacher that and believed she had told others. ▮ said ▮ felt that others may have thought ▮ had done as Ms. Medart claimed and had something to do with her not being able to attend the ▮ meetings. When I interviewed Ms. Medart, she admitted telling a teacher who was a friend and in frustration however she said she had received information from Tommy Blanchard that ▮ and another teacher had suggested she not be able to attend. ▮ could offer no further information or actions related to ▮ feelings of the hostile work environment although ▮ did state ▮ felt the "I Resolve" campaign had made the school campus divisive as a result. Having no other facts to include I was unable to substantiate ▮ allegation.

In reviewing Ms. Medart's job classification (Exhibit 7F), based upon the facts including conduct, I find she failed to meet the standards in her job description in the overview, her essential responsibilities, and qualifications which included:

- **Performs instruction and related duties in accordance with District Policies and terms of the teacher contract**
- **The ability to effectively work and communicate with students, parents, and school personnel from diverse cultures and/or backgrounds**
- **The ability to work harmoniously with others**
- **Maintain the integrity of confidential information relating to students, staff, and district patrons**
- **Cultivate and model a respectful working and learning environment**
- **Model personal behaviors of honesty, fairness, courtesy and consideration**
- **Maintain a cooperative relationship with administration, staff, students and parents**
- **Demonstrate competency in equity, diversity, and inclusion"**

Based on the five (5) sustained Policy violation findings listed above, I am recommending to Superintendent Kolb that he terminate your employment as a Teacher, with Grants Pass School District No. 7. A pre-termination hearing has been scheduled with Superintendent Kirk Kolb for Tuesday, June 8, 2021 at 9 A.M at the District Office. You are welcome to bring a representative with you to that hearing.

Respectfully,

*[signature]*

Sherry Ely
Chief Finance & Operations Officer

CC:   Mr. Kirk Kolb, Superintendent
       Mr. Danny Huber-Kantola, Human Resources Director
       Mr. Tommy Blanchard, Principal, North Middle School
       Ms. Mickey Jarvis, Association President