**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
Telephone: 503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
Telephone: 503-726-5975
VICKERS PLASS LLC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035

      Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| RACHEL G. DAMIANO and KATIE S. MEDART, | Case No. 1:21-cv-00859-CL |
| Plaintiffs, | |
| v. | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| GRANTS PASS SCHOOL DISTRICT 7, an Oregon public body; THE MEMBERS OF THE BOARD OF EDUCATION OF GRANTS PASS SCHOOL DISTRICT 7 – Scott Nelson, Cliff Kuhlman, Gary Richardson, Debbie Brownell, Cassie Wilkins, Brian Delagrange, and Casey Durbin – in their official and personal capacities; KIRK T. KOLB, Superintendent, Grants Pass School District 7, in his official and personal capacity; and THOMAS M. BLANCHARD, Principal, North Middle School, Grants Pass School District y, in his official and personal capacity, | *ORAL ARGUMENT REQUESTED* |
| Defendants. | |

# **Table of Contents**

LR 7-1 ........................................................................................................................ 1

MOTION...................................................................................................................... 1

INTRODUCTION ........................................................................................................ 1

STANDARDS............................................................................................................... 2

BACKGROUND .......................................................................................................... 3

   A.   Plaintiffs .............................................................................................................. 3

   B.   I Resolve ............................................................................................................. 3

   C.   Investigation....................................................................................................... 4

   D.   Termination and Reinstatement ........................................................................ 5

ARGUMENT AND AUTHORITY .............................................................................. 6

   I.   The District Board should be dismissed. .......................................................... 6

   II.   Section 1983:  First Amendment and Equal Protection.................................... 6

      a.   Section 1983:  The official capacity claims are duplicative. ........................ 7

      b.   Section 1983:  The individual Board members should be dismissed. ........... 7

         (1)   Board members are entitled to legislative immunity. ............................... 7

         (2)   Individual Board members cannot act without a majority......................... 8

      c.   Section 1983:  First Amendment retaliation. .............................................. 8

         (1)   Public Concern.......................................................................................... 9

         (2)   Public v. Private Citizen ........................................................................... 9

         (3)   Substantial or Motivating Factor ............................................................ 10

         (4)   The District's Justification...................................................................... 10

         (5)   Same Decision ........................................................................................ 12

      d.   Section 1983:  The "content-viewpoint" claim should be analyzed under *Pickering*. 13

      e.   Section 1983:  Prohibiting employees from commenting on political matters during the *scope of their employment* does not violate the First Amendment. ................................ 13

      f.   Section 1983:  Plaintiffs do not state an Equal Protection claim............................... 15

         (1)   Plaintiffs cannot bring an Equal Protection claim predicated on alleged retaliation. 15

         (2)   Plaintiffs' Equal Protection claim alleges a class-of-one. ....................................... 15

         (3)   The District's decisions satisfy rational basis review. ............................................ 16

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

g.    Section 1983:  Individual Liability ........................................................ 16

(1)    Personal Participation .............................................................. 17

(2)    The individual defendants are entitled to qualified immunity on plaintiffs' section 1983 claims. ........................................................................................ 17

h.    Section 1983:  Municipal liability ....................................................... 19

III.    Title VII:  The District did not discriminate against plaintiffs based on religion. ......... 20

a.    Similarly situated individuals were not treated differently. ........................... 20

b.    The District had legitimate, non-discriminatory reasons for its decisions. ............... 21

IV.    State Law Constitutional Claim ............................................................ 21

a.    Plaintiffs cannot recover monetary damages. ........................................... 21

b.    No state laws are at issue. .............................................................. 21

c.    The individual defendants are not proper defendants. ................................. 22

CONCLUSION ................................................................................ 22

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

# <u>Table of Authorities</u>

## <u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 2

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 17

*Bd. of County Comm'rs v. Umbehr,* 518 U.S. 886 (1996) ............................................... 11

*Berry v. Dep't of Soc. Servs.,*447 F.3d 642 (9th Cir. 2006) ........................................... 13

*Bodett v. Comcom, Inc.,* 336 F.3d 736 (9th Cir. 2004) .................................................... 20

*Bodett v. CoxCom, Inc.,*336 F.3d 736 (9th Cir. 2004) ................................................... 21

*Bogan v. Scott-Harris,* 523 U.S. 44 (1998) ......................................................................... 7

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) ................................................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 2

*Clairmont v. South Mental Health,* 632 F.3d 1091 (9th Cir. 2011) ............................... 11

*Delia v. City of Rialto,* 621 F.3d 1069 (9th Cir. 2010) ................................................... 19

*Desrochers v. City of San Bernadino,* 572 F.3d 703 (9th Cir. 2009) ............................... 9

*Doe v. Claiborne County, Tennessee,* 103 F.3d 495 (6th Cir. 1996) ................................. 8

*Dombroski v. City of Salem,* 2012 WL 1035719 (D. Or. March 26, 2012) ...................... 6

*Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003 (9th Cir. 2000) ...................... 14

*Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108 (9th Cir. 2011) .......................... 20

*Eng v. Cooley, et. al,* 552 F.3d 1062 (9th Cir. 2009) ............................................... passim

*Enquist v. Oregon Dep't of Agric.,*553 U.S. 591 (2008) .......................................... 15, 16

*Ex Parte Curtis,* 106 U.S. 371 (1882) ............................................................................ 13

*Garcetti v. Ceballos,* 547 U.S. 410 (2006) .................................................................. 9, 11

*Gomez v. Vernon,* 255 F.3d 1118 (9th Cir. 2001) ............................................................. 7

*Hiers v. Bd. of Regents of the University of North Texas System,* 2022 WL 748502 (E.D. Texas
   Mar. 11, 2022) ............................................................................................................ 13

*Howard v. City of Coos Bay,* 2011 WL 899619 (D. Or. Mar. 14, 2011) ........................ 10

*Hunter v. City of Eugene,* 309 Or. 298 (1990) ......................................................... 21, 22

*Johnson v. Poway Unified Sch. Dist.,* 658 F.3d 954 (9th Cir. 2011) ............................... 9

*Kaahumanu v. Cnty of Maui,* 315 F.3d 1215 (9th Cir. 2003) .......................................... 8

*Mattos v. Agarano,* 661 F.3d 433 (9th Cir. 2011) ......................................................... 18

*Mazzeo v. Gibbons*, 2010 WL 4384207 (D. Nev. Oct. 28, 2010) ................................... 15

*Mazzeo v. Young,* 510 F. App'x 646 (9th Cir. 2013) ..................................................... 15

*McDonnell Douglas Corp v. Green,* 411 U.S. 792 804 (1973) ....................................... 20

*Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) ..................................... 19

*Moran v. Washington,* 147 F.3d 839 (9th Cir. 1998) ..................................................... 18

*Munroe v. Cent. Bucks Sch. Dist.,*805 F.3d 454 (3d Cir. 2015) ................................... 11

*Nelson v. Pima Community Colleg*e, 83 F.3d 1075 (9th Cir. 1996) ................................. 2

*Occhionero v. City of Fresno,* 2008 WL 2690431 (E.D. Cal. July 3, 2008) ................... 15

*Ortez v. Washington Co.*, 88 F.3d 804 (9th Cir. 1996) ................................................... 17

*Otten v. Schicker,* 655 F.2d 142 (8th Cir.1981) ............................................................. 14

*Perry v. St. Pierre,* 518 F.2d 184 (2d Cir.1975) ............................................................ 14

*Peterson v. Hewlett-Packard Co.,* 358 F.3d 599 (9th Cir. 2004) .................................. 20

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

*Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968)............................................................ 11, 12, 13, 18

*Reeder v. Kansas City Board of Police Comm'rs,* 733 F.2d 543 (8th Cir.1984) ........................ 13

*Rollins v. McMinnville School Dist., et al.,* 3:20-cv-00900-HZ, dkt. 35 at 2 (D. Or. Nov. 27, 2021) ......................................................................................................................................... 22

*Romer v. Evans,* 517 U.S. 620 (1996) ...................................................................................... 16

*Saucier v. Katz,* 533 U.S. 194 (2001) ...................................................................................... 17

*State v. Rangel,* 328 Or. 294 (1999)......................................................................................... 22

*T.L. ex rel Lowry v. Sherwood Charter School,* 68 F. Supp. 3d 1295 (D. Or. 2014) .................. 21

*United Public Workers v. Mitchell,* 330 U.S. 75 (1947).............................................................. 13

*United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548 (1973).... 13, 14

*United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539 (9th Cir. 1989).................... 2

*Vance v. County of Santa Clara,* 928 F. Supp. 993 (N.D. Cal. 1996) ........................................... 7

*Wachsman v. City of Dallas,* 704 F.2d 160 (5th Cir.1983)......................................................... 13

*Waters v. Churchill,* 511 U.S. 661 (1994) ................................................................................. 14

*West v. Atkins,* 487 U.S. 42 (1988) ............................................................................................ 7

## STATUTES

42 U.S.C. § 1983....................................................................................................................... passim

ORS 30.260 ............................................................................................................................... 22

ORS 30.265 ............................................................................................................................... 22

ORS 332.055............................................................................................................................... 8

## OREGON CONSTITUTION

Article I, section 8............................................................................................................... 21, 22

## RULES

Fed. R. Civ. P. 56 ................................................................................................................... 1, 2

LR 7-1 ......................................................................................................................................... 1

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

**LR 7-1**

Pursuant to Local Rule 7-1(a), defendants certify that the parties conferred but were unable to resolve their disputes.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 56, defendants move this Court for its order granting summary judgment in their favor and against plaintiffs' second amended complaint ("complaint") in its entirety. The ground for this motion is that there is no genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law. Defendants' motion is supported by the argument and authorities below and the Declaration of Karen M. Vickers[1] and attached exhibits.

**INTRODUCTION**

During the relevant timeframe, plaintiffs were Grants Pass School District ("District") employees. Plaintiffs disagreed with the District's guidance regarding name changes, pronouns, and bathroom access. During work time, plaintiffs developed resolutions that contradicted the District's guidance and turned the resolution into a "movement" and attempted to convince their co-workers to sign on to it. Plaintiffs' actions disrupted the operations of the District. The District placed plaintiffs on paid administrative leave. Following an investigation, the District

---

[1] All cited exhibits are attached to the Vickers declaration.

PAGE 1 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

terminated plaintiffs' employment.  Three months later, plaintiffs were reinstated.

In the within lawsuit, plaintiffs make federal claims for alleged violations of the First Amendment, the Equal Protection clause of the Fourteenth Amendment, Title VII, and a state law claim for an alleged violation of the speech clause of the Oregon Constitution.

## STANDARDS

A court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The mere existence of a factual dispute between the parties is insufficient to defeat a motion for summary judgment. "Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment."  *Nelson v. Pima Community Colleg*e, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  Instead, to defeat a motion for summary judgment, the non-moving party must show that there is a genuine issue of fact, which means that the disputed evidence would be sufficient to support a reasonable jury verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245–52 (1986); *see United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542 (9th Cir. 1989) ("A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.").  As described below, there are no genuine issues of material fact which would allow the plaintiffs to proceed to trial, and the defendants are entitled to summary judgment as a matter of law on the plaintiffs' claims.

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

# BACKGROUND

## A. Plaintiffs

Plaintiff Rachel Sager[2] started working for the District as an assistant principal at North Middle School during the 2020/2021 school year.  Ex. 1 (Sager Depo 16:10-16; 29:17-21). Plaintiff Katie Medart started working for the District as a science teacher at North Middle School during the 2019/2020 school year.  Ex. 2 (Medart Depo 16:10-17).

## B. I Resolve

In February 2021, the District provided guidance for administrators regarding student pronouns, name changes, and bathroom access.  Ex. 1 (Sager Depo 48:13-17; 48:24-49:1-5 & Depo Ex. 1); Ex. 3 (Sager Interview Excerpt p. 1).   Sager, an administrator, disagreed with the guidance.  Ex. 1 (Sager Depo 50:7-9).  She knew that Medart had objections to it as well.  *See* Ex. 1 (Sager Depo 65:3-9).  They began working on resolutions that contradict the guidance.  Ex. 1 (Sager Depo 80:2-14); Ex. 2 (Medart Depo 64:20-65:3; 74:9-23).  They worked on these resolutions on work time.  *See, e.g.,* Ex. 1 (Sager Depo 44:7-96:10; 96:23-97:23; 101:13-102:8 & Depo Ex. 2); Ex. 2 (Medart Depo 65:25-66:6; 84:19-85:20; 86:2-18; 93:10-16 & Depo Ex. 7); Ex. 3 (Sager Interview Excerpt pgs. 2-3); Ex. 4 (Medart Interview Excerpt pgs. 1-5, 7-8) Ex. 5 (Kolb Depo 52:25-53:7).  Sager and Medart used their District email accounts to circulate the resolutions among themselves and others.  *See id.*

Sager and Medart filmed a video explaining their resolutions and posted it to YouTube and other social media platforms.  *See* https://www.youtube.com/watch?v=X-pk4FOrBCw .  At

---

[2] Rachel Sager was formerly known as Rachel Damiano.  Ex. 1 (Sager Depo 7:2-8).

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

one point during the video, Medart described concerns over a situation with a transgender male

student in her class.  Ex. 1 (Sager Depo 81:11-82:19).  Viewers of the video recognized the

identity of the student Medart referenced.  The video and resolutions together are called I

Resolve.  Ex. 1 (Sager Depo 79:11-20).  I Resolve was not created to further religion.  *See* Ex. 4

(Medart Interview Excerpt p. 6).

### C.  Investigation

Sager and Medart aggressively promoted their video while at work.  As Medart explained

in her first interview regarding this matter:

> **Dan Huber-Kantola**:  Did Rachel know you were spending this
> much time working on these things, talking to people during the
> school day?
>
> **Katie Medart**:  Yes.  I went and told her that I talked to so-and-so.
>
> **Dan Huber-Kantola**:  So when you talked to Jason Wright and
> Mason Mahaffie and Jordan Kasler, Rachel knew that you'd talked
> to all those different people.  She knew that you talked to them
> during flex[3] hours?
>
> **Katie Medart**:  Yes.
> …
> **Dan Huber-Kantola**:  Yeah Yeah.  So she knew you were talking
> to people to gather support for the resolution during flex time?
>
> **Katie Medart**:  Yes.  I believe she will say that she was aware of
> that.  I would tell her after I did it, "Today, I went and talked to…"
> "I shared this information.  I sent them the link."  "This person said
> they would check it out," This person said, 'Thank you.  They're
> excited,'" "This person said, 'I signed it.'"

Ex. 4 (Medart Interview Excerpt pg. 8).

The District's Internet filters blocked plaintiffs' I Resolve website.  Plaintiffs used their

---

[3] Flex time is work time.  *See* Ex. 2 (Medart Depo 49:17-50:7).

PAGE 4 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

positions within the District to unblock it.  Ex. 1 (Sager Depo 94:11-18; 95:12 – 96:10 & Depo Ex. 2).  Discussions, planning, and recruitment happened on campus during the workday.  Ex. 5 (Kolb Depo 93:25-94:16).  As word of plaintiffs' actions spread, substantial disruption occurred. Ex. 5 (Kolb Depo 57:9-58:6; 103:10-20; 104:10-105:3); Ex. 6 (Ely Depo 32:6-13; 33:1-4); Ex.7 Cooks (7:6-13; 29:4-13).  The District received complaints from plaintiffs' co-workers, students, and the community regarding plaintiffs' activities.

The District placed plaintiffs on paid administrative leave to investigate.  Ex. 1 (Sager Depo 114:24-115:5 & Depo Ex. 5); Ex. 2 (Medart Depo 92:13-21 & Depo Ex 9).  Initially, North Middle School Principal, defendant Tommy Blanchard, and HR Director Danny Huber-Kantola began the investigation.  The District later hired Bill Landis, an outside investigator, because Medart filed a counter complaint (which she ultimately withdrew).  Ex. 5 (Kolb Depo 70:15-19); Ex. 2 (Medart Depo 93:17-94:12; 97:9-18; 97:22-25).  Landis determined that plaintiffs violated several District policies.  Ex. 8 (Landis Report re Sager); Ex. 9 (Landis Report re Damiano).

**D.  Termination and Reinstatement**

Landis' reports first went to Sherry Ely, Chief Finance & Operations Officer for the District.  Ex. 6 (Ely Depo 6:18-21).  Ely reviewed the reports and requested to meet with plaintiffs for an explanation.  Plaintiffs refused to meet with Ely.  Ely recommended that District Superintendent, defendant Kirk Kolb, terminate plaintiffs' employment.  Ex. 6 (Ely Depo 28:6-29:4); Ex. 1 (Sager Depo 121:7-20 & Depo Ex. 6); Ex. 2 (Medart Depo 101:4-16 & Depo Ex. 10).  Kolb reviewed Ely's recommendations.  He too requested to meet with plaintiffs.  Plaintiffs refused.  Ex. 1 (Sager Depo 123:4-10); *see* Ex. 2 (Medart Depo 101:22-102:17).  Kolb then recommended that the District Board terminate plaintiffs' employment.  Ex. 1 (Sager Depo

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

124:7-14 & Ex. 7); Ex. 2 (Medart Depo 104:13-21 & Depo Ex. 11); Ex. 5 (Kolb Depo 98:19-99:1).

Plaintiffs had separate public hearings[4] before the District's school board ("Board") regarding the recommendation for termination in July 2021. Plaintiffs had the opportunity to bring representation to the Board meeting. Ex. 1 (Sager Depo 128:16-18). The Board voted 4-3 to terminate plaintiffs' employment. Ex. 1 (Sager Depo 128:21-24). Three and a half months later, in November 2021, the Board voted 4-3 to reinstate plaintiffs' employment. Ex. 1 (Sager Depo 128:25-129:4). Sager found a new position and left the District in June 2022. Ex. 5 (Kolb Depo 103:2-9); Ex. 1 (Sager Depo 16:19-22).

## ARGUMENT AND AUTHORITY

### I.    The District Board should be dismissed.

The complaint makes claims against the Board. The Board should be dismissed because it is not an entity separate from the District subject to suit. Oregon law only allows suit against school districts in their corporate name "and not otherwise." ORS 30.310. The Board is not a suable entity. *See, e.g., Dombroski v. City of Salem,* 2012 WL 1035719, *3 (D. Or. March 26, 2012).

### II.    Section 1983:  First Amendment and Equal Protection

Plaintiffs' first (First Amendment) and third (Equal Protection) causes of action are brought pursuant to 42 U.S.C. § 1983. To prevail on a section 1983 claim, a plaintiff must

---

[4] Plaintiffs had the option for closed hearings, but both requested public hearings. Ex. 1 (Sager Depo 126:25-127:2); Ex. 2 (Medart Depo 105:23-25).

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

establish the violation of a right secured by the federal constitution, and "must show that the deprivation was committed by someone acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

### a.  Section 1983:  The official capacity claims are duplicative.

The complaint makes the section 1983 claims against the individual defendants in both their official and individual capacities.  "A suit…against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Gomez v. Vernon,* 255 F.3d 1118, 1126 (9th Cir. 2001); *Vance v. County of Santa Clara,* 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then claims against the individuals are duplicative and should be dismissed.")  Since plaintiffs' complaint makes claims against the defendant District, the official capacity claims against the individual defendants are duplicative and should be dismissed.

### b.  Section 1983:  The individual Board members should be dismissed.

The complaint makes claims against current Board members Scott Nelson, Brian De La Grange, and Debbie Brownell in their official and personal capacities.  Plaintiffs' claims against these defendants are based on two theories: (1) that these defendants, as part of their duty on the school Board, voted to pass certain policies with which plaintiffs disagree; and (2) that these defendants voted to terminate plaintiffs' employment.  Both theories fail as a matter of law.

### (1) Board members are entitled to legislative immunity.

"[L]ocal legislators are…absolutely immune from suit under section 1983 for their legislative activities." *Bogan v. Scott-Harris,* 523 U.S. 44, 50 (1998).  In determining whether

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

legislative immunity applies, the court considers: (1) whether the decision involves ad-hoc decision-making or formulation of policy; (2) whether the decision applies to a few individuals or the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears "all the hallmarks of traditional legislation." *Kaahumanu v. Cnty. of Maui,* 315 F.3d 1215, 1220 (9th Cir. 2003) (citations omitted).

Here, all four factors are met with respect to the individual board members' votes respecting District policies: the challenged policies are personnel policies applicable to all District employees. Accordingly, the individual Board member defendants are entitled to legislative immunity to the extent plaintiffs' claims against them relate to their vote for various District policies.

### (2) Individual Board members cannot act without a majority.

Plaintiffs seek to hold the individual Board members liable for voting to terminate their employment. Pursuant to Oregon law, individual Board members cannot act alone with respect to an individual's employment. "The affirmative vote of the majority of members of the board is required to transact any business." ORS 332.055. In other words, only a school district board by majority vote while the board is in session has the authority to hire and fire teachers and administrators. *See Doe v. Claiborne County, Tennessee,* 103 F.3d 495, 512 (6th Cir. 1996) (explaining that school board members are unable to act except as constituent members of a majority). Accordingly, the individual Board members should be dismissed from plaintiffs' section 1983 claims.

### c. Section 1983: First Amendment retaliation.

Plaintiffs' first count of their first claim for relief alleges plaintiffs were terminated for

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

engaging in protected speech.[5]  In analyzing First Amendment retaliation claims, the Ninth

Circuit provides a sequential five-step series of questions:

> (1) Whether the plaintiff spoke on a matter of public concern;
>
> (2) Whether the plaintiff spoke as a private citizen or public employee;
>
> (3) Whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
>
> (4) Whether the state had an adequate justification for treating the employee differently from other members of the general public; and
>
> (5) Whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley, et. al,* 552 F.3d 1062, 1070 (9th Cir. 2009).  If a plaintiff fails any of these

elements, their speech retaliation claim fails.  *See id.* at 1070-72.

### (1) Public Concern

A plaintiff bears the burden of proving that her speech was on a matter of public concern.

*Johnson v. Poway Unified Sch. Dist.,* 658 F.3d 954, 961 (9th Cir. 2011).  Speech involving

personnel disputes and grievances are not matters of public concern.  *Desrochers v. City of San*

*Bernadino,* 572 F.3d 703, 710 (9th Cir. 2009).

### (2) Public v. Private Citizen

Public employees do not receive First Amendment protection when they "make

statements pursuant to their official duties."  *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006)

("When public employees make statements pursuant to their official duties, the employees are

---

[5] Plaintiffs' also make a claim titled "Compelled Speech" however plaintiffs simply reallege the factual basis of their retaliation claim.  Accordingly, the compelled speech claim should be analyzed under the First Amendment retaliation standards.

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.")  Thus, where an employee has an official duty to speak, or his speech is the product of performing the tasks the employee is paid to perform, the speech is spoken in her capacity as a public employee. *Eng,* 552 F.3d at 1071.

Here, plaintiffs equivocate on whether the speech was made pursuant to their official duties. *See, e.g.,* Ex. 1 (Sager Depo 98:14-23; 99:9-19).  Sometimes, plaintiffs take the position that drafting the I Resolve resolutions and proposing policies was part of their role with the District and that the First Amendment entitles them to do so. *See Id.*  Elsewhere, plaintiffs contend that time expended on I Resolve was done on their own time and unconnected to their work activities.

### (3) Substantial or Motivating Factor

Plaintiffs have the burden to show that defendants terminated their employment and that their speech was a substantial or motivating factor in the decision. *Id.* at 1071.  "[T]he fact that the employer knew about the employee's speech is not enough, in and of itself to survive summary judgment." *Howard v. City of Coos Bay,* 2011 WL 899619, *6 (D. Or. Mar. 14, 2011).

### (4) The District's Justification

Even if the Court finds plaintiffs can make their prima facie case, "the burden shifts to the government to show that under the balancing test established by *Pickering,* the state's legitimate administrative interests outweigh the employee's First Amendment rights." *Eng,* 552 at 1071 (internal citations and quotations omitted).

> This inquiry, known as the *Pickering* balancing test, asks:
> whether the relevant government entity had an adequate
> justification for treating the employee differently from any other

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

> member of the general public." *Garcetti,* 547 U.S. at 418.  Its
> qualified restriction of ordinarily protected speech recognizes that
> "[a] government entity has broader discretion to restrict speech
> when it acts in its role as employer, but the restrictions it imposed
> must be directed at speech that has some potential to disrupt the
> entity's operations.

*Id.*

Stated differently, an adverse action based on protected speech may be justified when legitimate countervailing government interests are sufficiently strong.  *Bd. of County Comm'rs v. Umbehr,* 518 U.S. 886, 675 (1996).  Public employers are allowed to prohibit otherwise protected speech where the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees, outweighs" the employee's right to comment on matters of public concern.  *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).

To analyze whether the government's administrative interests outweigh a plaintiff's right to engage in protected speech, courts "examine disruption resulting both from the act of speaking and from the content of the speech."  *Clairmont v. South Mental Health,* 632 F.3d 1091, 1107 (9th Cir. 2011).  The government interests "include promoting efficiency and integrity in the discharge of official duties and maintaining proper discipline in the public service."  *Id.*

The analysis conducted by courts looks to whether plaintiff's speech "impeded his ability to perform his job duties."  *Id.*  Along the same lines, courts also consider the extent that plaintiff's speech interfered with workplace relationships.  *Id.*  Interference with workplace relationships can be shown via "actual, material and substantial disruption, or reasonable predictions of disruptions in the workplace."  *Id.*  Courts are also more likely to accept a government employer's prediction of future disruption if some disruption has already occurred. *See e.g., Munroe v. Cent. Bucks Sch. Dist.,* 805 F.3d 454 477-78 (3d Cir. 2015) (relying on

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

complaints from parents whose children were criticized in teacher's blog with demands for their children to be placed in a different classroom).

Here, plaintiffs' speech caused or had a potential to cause a disruption to the District. The District received nearly 100 complaints about plaintiffs' conduct. Students staged protests. Administrators had to spend significant time responding to these issues, rather than on the work of education students. Additionally, plaintiffs' actions in promoting their speech at work harmed the working relationship among school staff and students. The District concluded that plaintiffs' speech caused a disruption or was likely to do so.

### (5) Same Decision

Finally, even if "the government fails the *Pickering* balancing test, it alternatively bears the burden of demonstrating that it "would have reached the same [adverse employment] decision even in the absence of the [employee's] protected conduct." *Eng*, 552 at 1071. In other words, [Defendants] may avoid liability by showing that the employee's protected speech was not a but-for cause of the adverse employment action." *Id*. This test "asks whether the 'adverse employment action was based on protected and unprotected activities," and if the state "would have taken the adverse action if the proper reason alone had existed.'" *Id*. Defendants prevail if they "successfully allege . . . that [they] would have made the same employment decisions even absent the questioned speech." *Id*. at 1072. Defendants would have proceeded in the same manner regardless of plaintiffs' alleged protected speech. *See, e.g.,* Ex. 6 (Ely Depo 30:15-25). Plaintiffs' numerous policy violations support their termination.

    **d.  Section 1983:  The "content-viewpoint" claim should be analyzed under**
        ***Pickering.***

Plaintiffs also make a First Amendment claim titled "content-viewpoint restriction" in

which they alleged that defendants have allowed and failed to punish speech by other District

employees.  The *Pickering* analysis above applies to viewpoint discrimination claims brought by

public employees.  *See, e.g., Hiers v. Bd. of Regents of the University of North Texas System,*

2022 WL 748502, \*12 (E.D. Texas Mar. 11, 2022) citing *Berry v. Dep't of Soc. Servs.,* 447 F.3d

642 (9th Cir. 2006).  As described above, under that framework plaintiffs' claims fail.

    **e.  Section 1983:  Prohibiting employees from commenting on political**
        **matters during the *scope of their employment* does not violate the First**
        **Amendment.**

Plaintiffs' final First Amendment claim is a challenge to District policies which prohibit

them from speaking on political issues while at work.  Plaintiffs allege that this is an

unconstitutional prior restraint on speech.

For over a hundred years, courts have upheld regulations on the rights of public

employees to engage in political speech at the federal, state, and local level.  *United States Civil*

*Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548 (1973); *United Public Workers*

*v. Mitchell,* 330 U.S. 75 (1947) ; *Ex Parte Curtis,* 106 U.S. 371 (1882); *Broadrick v.*

*Oklahoma,* 413 U.S. 601, 606 (1973) (upholding state laws similar to the federal Hatch Act)

including law enforcement officers.); *Reeder v. Kansas City Board of Police Comm'rs,* 733 F.2d

543, 547 (8th Cir.1984) (upholding Mo.Rev.Stat. § 84–830, which prohibited members of the

Kansas City Police Department from making any political campaign contributions); *Wachsman*

*v. City of Dallas,* 704 F.2d 160 (5th Cir.1983) (upholding various provisions of the Dallas city

charter which prevented city police officers from making contributions to or soliciting

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

contributions for city council candidates); *Otten v. Schicker,* 655 F.2d 142, 144 (8th Cir.1981) (upholding a St. Louis Police Department local rule which prevented officers from running or campaigning for public office); *Perry v. St. Pierre,* 518 F.2d 184, 186 (2d Cir.1975) (upholding a provision of the Plattsburgh, New York, city charter which made it unlawful for a city police officer to, among other things, "attempt to influence any voter").

These restrictions – many of which apply to public employees' off work political activities, not the on campus and scope of employment speech at issue here – serve legitimate and important government interests. *See, e.g., Letter Carriers,* 413 U.S. at 566-60; *Waters v. Churchill,* 511 U.S. 661, 674–75 (1994) (plurality opinion) (stating that "[g]overnment agencies are charged by law with doing particular tasks," that "[a]gencies hire employees to help do those tasks as effectively and as efficiently as possible" and that "[w]hen [an employee] ... begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her"). Among those interests, is the encouragement of impartiality and the public perception of impartiality in government services. *See Letter Carriers,* 413 U.S. at 565 (stating that public employees "are expected to enforce the law ... without bias or favoritism" and that "[a] major thesis of the Hatch Act is that to serve this great end of Government-the impartial execution of the laws-it is essential that federal employees" not become involved in politics). The District's policies which plaintiffs challenge advance similar interests. Plaintiffs' policy-based challenge based on their *on campus* speech *in the course of their employment* should be dismissed. *See Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1014 (9th Cir. 2000).

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

### f.  Section 1983:  Plaintiffs do not state an Equal Protection claim.

The third cause of action is for an alleged violation of the Equal Protection clause of the Fourteenth Amendment.  Plaintiffs allege defendants have not taken disciplinary action against employees who have expressed support for and endorsed "the concept of shifting gender identity."  Plaintiffs allege that, in contrast, defendants have taken disciplinary action against plaintiffs who present a dissenting view.

#### (1) Plaintiffs cannot bring an Equal Protection claim predicated on alleged retaliation.

Plaintiffs' Equal Protection claim is based on alleged retaliation.  Disparate treatment stemming from alleged retaliation for speech or conduct does not implicate the Equal Protection Clause of the Fourteenth Amendment.  *Mazzeo v. Gibbons*, 2010 WL 4384207, at *5 (D. Nev. Oct. 28, 2010) ("The Court concludes that [Plaintiff's] allegations impermissibly combine her First Amendment Retaliation and Fourteenth Amendment Equal Protection claims."), *aff'd sub nom. Mazzeo v. Young*, 510 F. App'x 646 (9th Cir. 2013); *Occhionero v. City of Fresno*, 2008 WL 2690431, at *8 (E.D. Cal. July 3, 2008) ("[T]his Court agrees with other courts that a claim of different treatment in retaliation for speech is a First Amendment claim which does not invoke the Equal Protection Clause. At its core, [Plaintiff's] claim is First Amendment retaliation, not equal protection."), *aff'd*, 386 F. App'x 745 (9th Cir. 2010).  Plaintiffs' Equal Protection claim should accordingly be dismissed.

#### (2) Plaintiffs' Equal Protection claim alleges a class-of-one.

Plaintiffs seem to be making an Equal Protection class-of-one claim.  Class-of-one claims are not cognizable in the public employment context. *Engquist v. Oregon Dep't of Agric.,* 553

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

U.S. 591, 598 (2008).  As the Supreme Court explained in *Engquist*:

> [T]he class-of-one theory of equal protection – which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review – is simply a poor fit in the public employment context.  To treat employees differently is not to classify them in a way that raises equal protection concerns.  Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship.  A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id.* at 605.

Here, plaintiffs are essentially attempting to assert a class-of-one Equal Protection claim over their terminations.  Such claims are not cognizable.  Accordingly, plaintiffs' Equal Protection claim should be dismissed.

### (3)  The District's decisions satisfy rational basis review.

Decisions that do not burden a protected class are subject to rational basis review.  *See Romer v. Evans,* 517 U.S. 620, 631 (1996).  Under rational basis review, the decision must be rationally related to furtherance of a legitimate governmental interest.  *Id.*  Here, the District terminated plaintiffs' employment for multiple policy violations, each of which, as described above serves legitimate government interests.

### g.  Section 1983:  Individual Liability

If plaintiffs failed to identify any constitutional violations then there is no constitutional claim for which the individual defendants—all of whom were named as defendants with respect to all of the plaintiffs' section 1983 claims—can potentially be liable.  If, on the other hand, plaintiffs identified a constitutional violation, then the question becomes whether there is any

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

basis for any individual defendant to be liable.

**(1) Personal Participation**

Because section 1983 does not provide for vicarious liability, an individual's liability under section 1983 arises only if he "personally participated" in the alleged constitutional deprivation (or that he was "personally involved," as it is often phrased). *Ortez v. Washington Co.*, 88 F.3d 804, 809 (9th Cir. 1996). That is, an official can only be liable under section 1983 "for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Here, plaintiffs cannot show that each of the individual defendants personally participated – in the section 1983 sense – in the alleged violation of plaintiffs' rights. Blanchard, for instance, took no action against plaintiffs' employment other than placing them on paid administrative leave. Moreover, plaintiffs cannot establish that each individual defendant had the requisite state of mind or knowledge of other employees' alleged actions necessary to establish liability against each of them in their individual capacities. Finally, since only the Board, acting as a majority, can make termination decisions, the only proper defendant on plaintiffs' section 1983 claims is the defendant District. Kolb, Blanchard, Nelson, Brownell, and De La Grange should be dismissed.

**(2) The individual defendants are entitled to qualified immunity on plaintiffs' section 1983 claims.**

Even if plaintiffs can establish personal participation, the individual defendants are entitled to qualified immunity. Qualified immunity is designed "to ensure that…[government officials] are on notice that their conduct is [clearly] unlawful" before they can be subject to civil suit. *Saucier v. Katz,* 533 U.S. 194, 206 (2001). Accordingly, government officials will not be

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

liable for civil damages "insofar as their conduct does not violate clearly

established…constitutional rights of which a reasonable person would have known." *Id.*  Under

this standard, the question is whether the contours of the right were "sufficiently clear that every

reasonable official would have understood that what he [was] doing violate[d] that right."  While

courts "do not require a case directly on point, …existing precedent must have placed the

statutory or constitutional question beyond debate" as applied to the *particular conduct*, and the

*particular set of circumstances,* at issue.  *Mattos v. Agarano,* 661 F.3d 433, 442 (9th Cir. 2011).

Plaintiffs who sue government officials under section 1983 bear the burden of proving that the

officials lost their qualified immunity.  *Moran v. Washington,* 147 F.3d 839, 844 (9th Cir. 1998).

Because the *Pickering* balancing test is "a context-intensive, case-by-case balancing

analysis, the outcome of which is rarely clear…the law regarding First Amendment retaliation

claims will *rarely, if ever,* be sufficiently 'clearly established' to preclude qualified immunity."

*Eng,* 552 F.3d at 1076, fn. 6 (emphasis added).

In the instant case, a reasonable official in defendants' position facing the exact same

facts would have no reason to believe that terminating plaintiffs for multiple policy violations

would violate the First Amendment or the Equal Protection clause of the Fourteenth

Amendment.  The balancing inquiry required by *Pickering* means a reasonable official would not

find the law to be "clearly established" regarding which facts support a finding that the District's

legitimate interests outweighed plaintiffs' alleged First Amendment rights.

Here, plaintiffs created a disruption and the potential for disruption with both their off

and on campus activities.  They did so in advocating to reduce rights of transgender students, a

position at least one individual defendant understood was discrimination in violation of federal

law.  Ex. 5 (Kolb Depo 39:25-40:8; 102:1-8; 102:14-20).  No law clearly establishes that plaintiffs' termination in these circumstances violated plaintiffs' First Amendment or Equal Protection rights.

### h.  Section 1983:  Municipal liability

If plaintiffs failed to identify any constitutional violations, then there is no constitutional claim for which the defendant District can potentially be liable.  If, on the other hand, the plaintiffs identified a constitutional violation, then the question becomes whether there is any basis for the defendant District – who was named as a defendant with respect to all the plaintiffs' section 1983 claims – to be liable for any surviving constitutional claim.

Section 1983 does not provide for vicarious liability.  A municipal entity cannot be liable under section 1983 simply because it employed a person who violated someone's constitutional rights.  Instead, a municipal entity can only be liable for its "own" constitutional deprivations.  *See generally Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).  One way to establish *Monell* liability is to show that the employment decision was made by a "final policymaker."  *Delia v. City of Rialto,* 621 F.3d 1069, 1081-82 (9th Cir. 2010).

For the purposes of the within motion, defendants concede that the Board's decision with respect to plaintiffs' terminations were actions by a final policymaker.  However, for purposes of *Monell* liability, plaintiffs cannot establish that the Board's decision violated plaintiffs' rights.  And assuming for the sake of argument only that plaintiffs can bring an Equal Protection claim, plaintiffs cannot establish that the Board intentionally treated others similarly situated differently without a proper basis for doing so.

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

### III.    Title VII:  The District did not discriminate against plaintiffs based on religion.

Plaintiffs make a religious discrimination claim under Title VII.  They allege that the District discriminated against them for their religious beliefs.

Plaintiff's disparate treatment claim fails because: (a) there are no comparators, and (b) regardless, the District had legitimate, non-discriminatory reasons for its actions.

The Title VII claim is analyzed under the *McDonnell Douglas* burden-shifting framework.  *Bodett v. Comcox, Inc.,* 336 F.3d 736, 743 (9th Cir. 2004) (describing Title VII framework).  Under this framework, plaintiffs have the burden of proving (1) they are member of a protected class; (2) they were qualified for the position; (3) they experienced an adverse employment action; and (4) similarly situated individuals outside their protected class were treated more favorably, or that other circumstances surrounding the adverse action give rise to an inference of discrimination.  *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004).  If plaintiffs meet that burden, then the District must offer a legitimate non-discriminatory reason for taking the adverse action.  *Bodett,* 366 F.3d at 744.  Plaintiffs can then attempt to show that the given reason is pretextual.  *McDonnell Douglas Corp v. Green,* 411 U.S. 792 804 (1973).

#### a.  Similarly situated individuals were not treated differently.

Similarly situated employees were not treated different.  "Other employees are similarly situated to the plaintiff when they have similar jobs and display similar conduct."  *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1114 (9th Cir. 2011).  Here, plaintiffs cannot show that other employees were or would have been treated differently than plaintiffs if they similarly violated District policy.

PAGE 20 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**b.   The District had legitimate, non-discriminatory reasons for its decisions.**

The District had legitimate, non-discriminatory reasons for terminating plaintiffs'

employment.  Plaintiffs violated multiple District policies, including disruption to the school

environment.  Preventing disruption in school programs is a legitimate, non-discriminatory

reason for a school district's actions.  *See, e.g., T.L. ex rel Lowry v. Sherwood Charter School,* 68

F. Supp. 3d 1295, 1313 (D. Or. 2014); *see also Bodett v. CoxCom, Inc.,*336 F.3d 736 (9th Cir.

2004) (Employee who argued that comments to co-worker about the Bible's view of

homosexuality violated of facially neutral policies.  Termination for violation of such policies

was a legitimate, non-discriminatory reason for termination.)  Plaintiffs cannot establish their

statutory religious discrimination claims.


**IV.      State Law Constitutional Claim**

The second cause of action is brought against all defendants and alleges a violation of the

speech clause of the Oregon Constitution.  Plaintiffs allege that defendants violated Article I,

section 8 of the Oregon Constitution by terminating them because of their I Resolve video.

**a.   Plaintiffs cannot recover monetary damages.**

There is no private right of action for damages under the Oregon Constitution.  *Hunter v.

City of Eugene,* 309 Or. 298 (1990).  Accordingly, plaintiffs' Oregon Constitutional claim should

be dismissed.

**b.   No state laws are at issue.**

Plaintiffs' state law constitutional claims allege that defendants violated Article I, section

8, of the Oregon Constitution.  This provision addresses prohibitions against various types of

PAGE 21 – DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

laws.  No laws or even municipal policies are at issue in this case.  Furthermore, there is no basis to grant plaintiffs' relief under the Oregon Constitution related to the alleged retaliatory termination.  *Rollins v. McMinnville School Dist., et al.,* 3:20-cv-00900-HZ, dkt. 35 at 2 (D. Or. Nov. 27, 2021) (so holding regarding claims brought under Article I, section 8).  Finally, contrary to plaintiffs' allegations, plaintiffs were not terminated because of the content of their speech.  Plaintiffs terminations were based on policy violations, including that they engaged in disruptive speech on and off campus.  "Article I, Section 8 [of the Oregon Constitution], does not prohibit the enactment of statutes that focus on the forbidden effects of expression, if they are not directed at the substance of the expression."  *State v. Rangel,* 328 Or. 294, 299 (1999). Plaintiffs' claim alleging a violation of Article I, section 8 of the Oregon Constitution should be dismissed.

### c.  The individual defendants are not proper defendants.

This action is against a public entity and its agents, thus the state law claims are governed by the Oregon Tort Claims Act, ORS 30.260, *et seq.*  Pursuant to the OTCA, since plaintiffs cannot recover damages on a state law constitutional claim, *Hunter,* 309 Or. 298, that claim can only be brought against the defendant District.  *See* ORS 30.265(3).  The individual defendants should be dismissed from the Oregon Constitutional claim.

# CONCLUSION

For the reasons given above, defendants respectfully request that the Court grant their motion for summary judgment against all claims in plaintiffs' complaint.

VICKERS PLASS LLC
5200 SW MEADOWS ROAD, SUITE 150
LAKE OSWEGO, OREGON 97035
(503) 726-5985| (503) 726-5975

DATED: August 1, 2022.

VICKERS PLASS LLC

_____s/ Karen M. Vickers_____
**KAREN M. VICKERS,** OSB No. 913810
kvickers@vickersplass.com
503-726-5985
**BETH F. PLASS,** OSB No. 122031
bplass@vickersplass.com
503-726-5975
Of Attorneys for Defendants