```
 1              UNITED DISTRICT COURT
 2          FOR THE DISTRICT OF OREGON
 3               MEDFORD DIVISION
 4
    RACHEL G. DAMIANO and          )
 5  KATIE S. MEDART,
                                   )
 6
                Plaintiffs,        ) Case No.
 7
        vs.                        ) 1:21-CV-00859-CL
 8
    GRANTS PASS SCHOOL DISTRICT 7, )
 9  an Oregon public body; THE
    MEMBERS OF THE BOARD OF        )
10  EDUCATION OF GRANTS PASS
    SCHOOL DISTRICT 7 – Scott      )
11  Nelson, Cliff Kuhlman, Gary
    Richardson, Debbie Brownell,   )
12  Cassie Wilkins, Brian
    Delagrange, and Casey Durbin – )
13  in their official and personal
    capacities; KIRK T. KOLB,      )
14  Superintendent, Grants Pass
    School District 7, in his      )
15  official and personal
    capacity; and THOMAS M.        )
16  BLANCHARD, Principal, North
    Middle School, Grants Pass     )
17  School District y, in his
    official and personal          )
18  capacity,
                                   )
19
                Defendants.        )
20
21
22          DEPOSITION OF KATIE S. MEDART
23               June 6, 2022
24                 Monday
25               1:20 p.m.
```

                                        Page 1

**Vickers Declaration**
**Exhibit 2 Page 1 of 66**

Katie Medart - June 6, 2022

```
 1    time -- it could vary, but in general it was
 2    Monday through Thursday.  I didn't typically teach
 3    classes on Fridays.
 4           Q.    What classes were you teaching?
 5           A.    I taught -- you want over the span of
 6    my time there, like the variety?
 7           Q.    Sure.
 8           A.    I taught biology, anatomy and
 9    physiology, chemistry.
10           Q.    And then you came back to Grants Pass
11    for the '19-'20 school year?
12           A.    Yes.
13           Q.    And what was the position that you
14    had?
15           A.    I was hired at North Middle School
16    for -- I think it's called foundational science
17    teacher with a health endorsement.
18           Q.    Where do your sons go to school?
19           A.    Right now currently?
20           Q.    Yes.
21           A.    My oldest is at North Middle School.
22           Q.    What grade is he in?
23           A.    He's in 6th grade.
24           Q.    So this was his first year at North?
25           A.    Yes.  That is correct.
```

Page 16

Vickers Declaration
Exhibit 2 Page 2 of 66

```
 1   year.  What classes were you teaching for '20-'21?
 2        A.    So my first school year there?
 3        Q.    Second.
 4        A.    Okay.  Because it changed.  My first
 5   school year was 6th grade health and 7th grade
 6   science, and then my second school year was 7th
 7   grade science.
 8        Q.    What was your work schedule?
 9        A.    It changed, like, throughout the year;
10   does that make sense?  Because we were hybrid, and
11   so we have a different schedule -- not -- we were
12   online and we had a schedule, and then we moved to
13   hybrid, and then that changed, and then we
14   moved -- I think, all the way by the end of the
15   school year they moved all the way back.  So it
16   changed throughout that year.
17        Q.    Once you got back to in-person school,
18   what time did you get to work and leave work?
19        A.    Well, I got there -- typically, I was
20   there early.  So sometimes I would say by 7:30.
21   And then students didn't come, though, until, I
22   think, 9:15 or 9:30.  They started later.  And
23   they were only there until, I think, noon.  I
24   could be recalling that wrong.  It was a totally
25   different schedule.
```

Page 49

Vickers Declaration
Exhibit 2 Page 3 of 66

Katie Medart - June 6, 2022

1      Q.      Did you have flex time during that
2  time period?
3      A.      Yeah, we did.
4      Q.      What was that?
5      A.      It was just the time to be able to
6  work on other stuff.  You didn't have students
7  with you.
8      Q.      Okay.  Who was your supervisor that
9  year?
10      A.      Well, Tommy Blanchard was the
11  principal.
12      Q.      Was that the year that Rachel Damiano
13  came to the district?
14      A.      Yes.  I believe that her first --
15  yeah.  She wasn't there my first year.
16      Q.      Did you know her before she started
17  working for the district?
18      A.      No.  I had never met her before she
19  was my vice principal.
20      Q.      Did you have a particular concern
21  about parental permission for clubs?
22      A.      I did express that.
23      Q.      Why were you concerned about that?
24      A.      Because, to me, it's like a sports
25  activity.  And I think that like anything, my

Page 50

Vickers Declaration
Exhibit 2 Page 4 of 66

1  certain pronouns, you can't use those because

2  they --

3        A.    Violate my conscience.

4        Q.    Okay.

5        A.    But I can still be honoring, loving,

6  and respecting to them even by not violating my

7  conscience.

8        Q.    Before the I Resolve video, was there

9  some discussion among the staff about political

10 speech?

11       A.    Yes, I believe so.

12       Q.    What was that discussion about?

13       A.    Can you tell me what you're

14 referencing?  Because that was also the election

15 year, so there was lots of political speech that

16 happened amongst staff.  That was pretty broad.

17       Q.    Let's move on.  What is the history

18 beyond I Resolve?

19       A.    Can you clarify?

20       Q.    Sure.  How did it get started?

21       A.    Rachel -- my vice principal, Rachel,

22 approached me and asked if I wanted to help be

23 able to propose policy ideas to be considered, and

24 so -- related to gender identity policies.

25       Q.    When did she approach you about that?

Page 64

Katie Medart - June 6, 2022

1        A.    I think it was late February, maybe

2    early March.   It was one -- somewhere in that time

3    frame of last year.

4        Q.    Do you know what motivated her to

5    contact you about -- how did you describe it?

6        A.    About a policy related to gender

7    identity.

8        Q.    Okay.

9        A.    So I think I should just -- I don't

10    want to speculate about her motivation.  I think

11    that's a question to ask her.

12        Q.    Well, she described it slightly

13    differently than you did, so --

14        A.    Okay.

15        Q.    Had you had any communication with her

16    about gender identity issues?

17        A.    No, other than when she came to me.

18              But I think because she was an

19    administrator, she was aware of questions that I

20    had been asking.  She was my vice principal, and

21    so she was in weekly meetings, from my

22    understanding, with Tommy and Bill.  I think they

23    have regular admin meetings, and so she was aware

24    that I had asked questions.

25        Q.    Did she come to you during the work

Page 65

**Vickers Declaration
Exhibit 2 Page 6 of 66**

Katie Medart - June 6, 2022

1  time?

2       A.    Not instructional time.   Usually it

3  was -- I think the first time we met was after --

4  either in that reflex time, if students were back

5  on, or in the afternoon at the end of the day.

6  Students were never in my classroom with me.

7       Q.    Did you find it odd that your vice

8  principal came and asked you if you wanted to work

9  on policies related to gender identity issues?

10      A.    No.

11      Q.    Why not?

12      A.    Because we implement it in the

13  classroom.  I think it's great that administration

14  is -- actually, our admin get our input on a

15  number of different topics.  Like, I was on a

16  committee for working on a schedule.  And so, no,

17  I didn't think it was odd that she asked me.

18      Q.    What policies did you think needed to

19  be implemented regarding gender identity issues?

20      A.    We didn't have a policy.  It was

21  unclear.  I had multiple emails over the time I

22  had been there telling me different things that we

23  were supposed to do for our procedures.

24            And so it was really to be able to

25  create consistent ideas, and really just for us to

Page 66

Vickers Declaration
Exhibit 2 Page 7 of 66

1          MS. VICKERS:  All right.  Let's take a

2    break.

3          THE VIDEOGRAPHER:  We are going off

4    the record at 2:52.

5          (Recess:  2:52 p.m. to 3:04 p.m.)

6          THE VIDEOGRAPHER:  We are back on the

7    record at 3:04.

8    BY MS. VICKERS:

9          Q.    Ms. Medart, we know from previous

10    testimony from Ms. Sager that you started working

11    on I Resolve in March of '21.  Is that correct?

12          A.    Yeah.  It was either -- like I said

13    earlier, it was either March or late February.

14          Q.    Okay.  And what role did you have with

15    I Resolve?

16          A.    So the resolutions -- which we only

17    got to talk about one earlier which was the

18    bathroom idea.  There was other ideas that we

19    suggested in that -- my role was I reviewed and

20    edited.  So she wrote the first draft of the

21    resolution, and then I edited it and helped

22    contribute to the ideas that ended up being on

23    there.

24          Q.    Okay.  Did anyone else help you?  It

25    was you and Ms. Sager, and anyone else?

Page 74

Katie Medart - June 6, 2022

1        A.    Because we did think we were -- I
2    still don't think I did anything wrong.  And at
3    the time I didn't think I did anything wrong.  I
4    was working with my administrator who was telling
5    me my vice principal is supportive -- my principal
6    is supportive, she's having meetings with him, my
7    superintendent is supportive, my HR director is
8    supportive, and so -- and all of them knew and
9    none of them said anything to me, so I didn't -- I
10    still don't believe I did anything wrong, but at
11    the time I believe I have 100 percent support that
12    all we were doing is saying, Hey, here's some
13    ideas.  What are your thoughts about this, and
14    leading to having a discussion and sharing of
15    ideas.  That's all it was.
16        Q.    And Rachel Sager is your
17    administrator; correct?
18        A.    Yeah.  She was Damiano at the time.
19        Q.    Okay.  And did you use district
20    facilities and equipment for your I Resolve
21    campaign?
22        A.    So I wouldn't call it campaign,
23    but ...
24        Q.    What would you call it?
25        A.    And then I Resolve resolutions -- so

                                        Page 84

Katie Medart - June 6, 2022

1    we used minimally, minimus district equipment for

2    the resolution -- the drafting of the resolutions.

3        Q.    What equipment did you use?

4        A.    I used my desktop a little bit, and

5    then the internet -- or the email.

6        Q.    You used your district email?

7        A.    Yeah.  Because Rachel sent it to me as

8    my administrator.  She initiated it and sent it to

9    me at my school email.

10        Q.    And you used work time during the work

11    day to look at your school email?

12        A.    Yeah.  But all the ones, when you look

13    at Landis's things, they were like -- I don't

14    know, you'd have to timestamp, but I think

15    4:00 p.m., 5:00 p.m., or most of them are all,

16    like, either early in the morning.  It was

17    never -- it wasn't during instructional time.  I

18    think there's one exception of one that was right

19    before instructional time was getting ready to

20    start and it was a forward.

21            But, again, I believed -- and I think

22    there's a policy GBV which states that we're

23    allowed to be involved with staff decision-making

24    related to policies.

25        Q.    Okay.  I want you to take a quick look

Page 85

Vickers Declaration
Exhibit 2 Page 10 of 66

1    at what's been marked as Exhibit 7.

2                    (Deposition Exhibit No. 7

3                    marked for identification.)

4    BY MS. VICKERS:

5         Q.    And just tell me if these are

6    documents that were created when you were working

7    on I Resolve.

8         A.    Some of these I didn't create.  Some

9    of these are from Rachel to me.

10        Q.    Okay.  And if they're from Rachel to

11   you, are they using your district email?

12        A.    Let me see.  Yeah.  She sent it to my

13   district email on the first couple that I

14   reviewed.

15        Q.    And were those emails and documents

16   all from when you were doing work on I Resolve?

17        A.    On the resolution -- the drafting of

18   the resolution ideas, yes.

19        Q.    Correct.  Okay.  You can put that

20   aside.

21        A.    Can I make a note here?  Like, a lot

22   of these are from spring break.  So that would

23   have been when -- and I know there's a part in our

24   contract that says about, like, we -- that

25   employees -- so contractors, volunteers, everyone

Page 86

1    said, Well, who's going to be here with my

2    students?  And he told me, like, one of the

3    counselors, Diana Tonneson or someone, was going

4    to come in.  I said, Do you want to know what the

5    lesson is on?  He said sure.  I told him it was

6    about chemistry.  And then I was gonna leave, and

7    he told me I needed to pack all of my belongings,

8    that I wouldn't be coming back.

9        Q.    Okay.  Do you want to take a break?

10       A.    Thank you.

11       Q.    Do you want a break or are you okay?

12       A.    I'll be okay.

13       Q.    I'm going to hand you what's been

14   marked as Exhibit 9.

15              (Deposition Exhibit No. 9

16              marked for identification.)

17   BY MS. VICKERS:

18       Q.    Is that the notice that you received

19   that you were being put on paid administrative

20   leave?

21       A.    Yes, this looks accurate.

22       Q.    And then did you, subsequent to that,

23   have an interview with Danny Huber-Kantola?

24       A.    And Tommy Blanchard and Mickey Jarvis.

25   The day after, on April 6th, they told me there

Page 92

Katie Medart - June 6, 2022

```
 1    was -- I had to ask them for my complaints,

 2    because they didn't have them for me when they

 3    placed me on leave.

 4              And then the day after, they said that

 5    they were just going to read my complaints to me,

 6    and then they questioned me for over three

 7    hours -- about three hours.

 8         Q.    Where did the interview take place?

 9         A.    In this room.

10         Q.    And did you admit in that interview

11    that you used work time and resources on the

12    I Resolve campaign?

13         A.    I admitted to them that, yes, I had

14    used my desktop some and some of the equipment,

15    and minimally, and that I believed that I was

16    allowed to do that.

17         Q.    Did you make a complaint, then,

18    against Tommy Blanchard and Danny Huber-Kantola?

19         A.    Yeah, I did, because I believe they

20    were one of the ones named on the list of people,

21    yeah, with Bob and Nika.

22         Q.    So who did you make a complaint

23    against?

24         A.    I think they were both on there

25    with -- so I think it was Tommy and Danny -- do
```

Page 93

**Vickers Declaration**
**Exhibit 2 Page 13 of 66**

Katie Medart - June 6, 2022

1    you have it there in front of you?

2          Q.      I do not.

3          A.      I don't remember if I named them in

4    there or not.    I know Bob was named in there, and

5    I know Nika was named in there, and I believe I

6    did definitely name Tommy because I reported it to

7    him and he didn't do anything about it.

8          Q.      There was some reason that

9    Danny Huber-Kantola could no longer conduct the

10   investigation.    Do you know why that was?

11         A.      I don't.    I just know that they were

12   asked to recuse themselves and so they did.

13         Q.      So --

14         A.      It might have been that he was named

15   in there as it -- because I know he questioned me

16   about my beliefs and about me being fit to work

17   with students.    And he was aware about what I had

18   done and didn't say anything.

19         Q.      Was it just one complaint against all

20   of them or did you file multiple complaints?

21         A.      No, I didn't file multiple complaints.

22   I had filed -- I had done -- I did file a separate

23   one for Bob and Nika.    It wasn't a formal

24   complaint, but I didn't know anything.    I had

25   never done a formal complaint against anyone, and

Page 94

1    misinformation in there, tons of it, in his

2    report.

3              And I asked him about missing

4    documents and emails that I know exist and that he

5    left out that were pertinent, and also -- yeah.

6    So he just wasn't -- I believe he was hired to

7    come up with false allegations of policy

8    violation.

9         Q.    Before filing your own complaint, did

10   you consult with anyone about doing that?

11        A.    Yeah.

12        Q.    Who did you consult with?

13        A.    My union rep.  She told me to do it.

14        Q.    Mickey Jarvis told you to do it?

15        A.    Yes.

16        Q.    Did she --

17        A.    She put a lot of pressure on me to do

18   it.

19        Q.    Did she say it would be a good

20   strategic move?

21        A.    No.

22        Q.    Did you later withdraw your complaint?

23        A.    I did.

24        Q.    Why?

25        A.    Advice of counsel.

Page 97

Katie Medart - June 6, 2022

```
1    there's lots of different interactions that our
2    paths cross.  She has a big family here, and it's
3    kind of a small community.
4                    MS. VICKERS:  I'm going to hand you
5    what was been marked as Exhibit 10.
6                    (Deposition Exhibit No. 10
7                    marked for identification.)
8    BY MS. VICKERS:
9        Q.    Do you recognize Exhibit 10?
10       A.    Yes.
11       Q.    What is it?
12       A.    Investigative finding and
13   recommendation for termination.
14       Q.    And this is a letter that you received
15   from Sherry Ely on June 4, 2021?
16       A.    That is correct.
17       Q.    Turn to the last page.
18       A.    (Witness complies.)
19       Q.    Do you believe Ms. Ely would work hard
20   to treat you fairly?
21       A.    Yeah.
22       Q.    When you read this last paragraph, the
23   last sentence -- the second-to-last sentence
24   offers you a pretermination hearing with
25   Superintendent Kolb on Tuesday, June 8th, at the
```

                                        Page 101

**Vickers Declaration
Exhibit 2 Page 16 of 66**

1    district office?

2            A.      Uh-huh.

3            Q.      And you're allowed to bring a

4    representative?

5            A.      Yeah.

6            Q.      Did you attend that meet?

7            A.      I attended the first one.

8            Q.      Did you attend the one on June 8th

9    with Superintendent Kolb?

10           A.      I don't recall if that was the date or

11   not.    Is that the first one?

12           Q.      I don't know what you mean when you

13   say the first one.

14           A.      Because after we met with them they

15   were going to give me another one.    And so -- and

16   then after -- and then legal counsel recommended

17   we don't need to go to another one.    But I did

18   attend -- I think that's the only one that they

19   offered -- or that the date was sent.    And so I

20   did -- I attended my pretermination hearing.

21           Q.      Okay.   And who attended with you?

22           A.      Ray and --

23                   THE WITNESS:   I believe you were

24   there.   I think that's the meeting you were here

25   for.

                                        Page 102

Katie Medart - June 6, 2022

1          Q.    So you had Landis's report?

2          A.    Yeah, but I hadn't had it for very

3    long.

4          Q.    And you had union representation?

5          A.    And it had hundreds of pages in it.

6          Q.    So it had a lot of detail?

7          A.    Yeah, hundreds and hundreds of pages.

8    And I did have union representation.

9          Q.    And you had legal counsel?

10         A.    Yes.

11               MS. VICKERS:  I'm going to hand you

12   what's been marked as Exhibit 11.

13               (Deposition Exhibit No. 11

14               marked for identification.)

15   BY MS. VICKERS:

16         Q.    Do you recognize Exhibit 11?

17         A.    Yes, I do.

18         Q.    What is Exhibit 11?

19         A.    It's a notice of recommendation of

20   termination to the Grants Pass School board of

21   directors from Kirk Kolb dated June 18, 2021.

22         Q.    Were there statements in the I Resolve

23   that you didn't agree with?

24         A.    Well, when I proposed it, it was just

25   a sharing of ideas, so I agreed with that.  But it

                                        Page 104

Katie Medart - June 6, 2022

```
1   wasn't meant as, like -- it was honestly proposed
2   as, like, here's these ideas to get discussions
3   started that could be a solution for policies
4   related to gender identity which can be divisive
5   or pick one side or the other.  And ours was
6   trying to literally bring multiple sides of an
7   issue together in one common ground.
8          Q.    Did Rachel's dad have something to do
9   with I Resolve?
10         A.    Yeah, I think he contributed his ideas
11  to it.  I think she would -- I didn't ever have
12  any, though, interaction with him, I mean, until
13  after, but not during the developmental stage.  So
14  you'll have to ask her about his actual
15  involvement and what it was.
16               Out of curiosity, what does it have to
17  do with the termination letter?
18         Q.    So do you recall the school board
19  hearing on July 15, 2021?
20         A.    July 15, 2021, yes.
21         Q.    And --
22         A.    It was like kangaroo court.
23         Q.    And you requested an open hearing;
24  correct?
25         A.    Yes, I did.
```

Page 105

Vickers Declaration
Exhibit 2 Page 19 of 66

Katie Medart - June 6, 2022

```
1   State of Oregon    )
                       ) ss.
2   County of Douglas  )

3

4           I, Denise C. Zito Smith, CSR, a
5   Certified Shorthand Reporter for the State of
6   Oregon, hereby certify that the witness was sworn
7   and the transcript is a true record of the
8   testimony given by the witness; that at said time
9   and place I reported by stenotype all testimony
10  and other oral proceedings had in the foregoing
11  matter; that the foregoing transcript consisting
12  of 131 pages contains a full, true, and correct
13  transcript of said proceedings reported by me to
14  the best of my ability on said date.
15          If any of the parties or the witness
16  requested review of the transcript at the time of
17  the proceedings, such correction pages are
18  included.
19          IN WITNESS WHEREOF, I have set my hand
20  this 17th day of June 2022, in the City of
21  Canyonville, County of Douglas, State of Oregon.
22
23  <%9578,Signature%>
24  Denise C. Zito Smith
    Oregon CSR No. 01-0375
25  Expires 9/30/2024
```

Page 132

**Vickers Declaration**
**Exhibit 2 Page 20 of 66**

**Rachel Damiano (via Google Docs)** 
Resolution 2021-01 - Invitation to edit
March 10, 2021 at 9:44 AM

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following document:

 Resolution 2021-01

 I think I am getting mired in the overwhelming arguments against a lot of the policies but here is what I have started. Let me know your thoughts so far. This is a very preliminary draft.


Open in Docs

iresolve.gp@gmail.com is outside your organization.

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because iresolve.gp@gmail.com shared a document with you from Google Docs.



Plaintiff 5415

**Vickers Declaration Exhibit 2 Page 21 of 66**

**Katie Medart**
Re: Resolution 2021-01 - Invitation to edit
March 14, 2021 at 6:21 PM
Rachel Damiano



**From:** Rachel Damiano (via Google Docs) <iresolve.gp@gmail.com>
**Sent:** Wednesday, March 10, 2021 9:44:10 AM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Resolution 2021-01 - Invitation to edit

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following document:

Resolution 2021-01

I think I am getting mired in the overwhelming arguments against a lot of the policies but here is what I have started. Let me know your thoughts so far. This is a very preliminary draft.

Open in Docs

iresolve.gp@gmail.com is outside your organization.

Google Docs: Create and edit documents online.

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

You have received this email because iresolve.gp@gmail.com shared a document with you from Google Docs.



**Plaintiff 5416**

**Vickers Declaration**
**Exhibit 2 Page 22 of 66**

**From:** **Katie Medart** kmedart@grantspass.k12.or.us
**Subject:** RE: State Board of Education Meeting on March 18, 2021
**Date:** March 10, 2021 at 3:14 PM
**To:** Rachel Damiano rdamiano@grantspass.k12.or.us



Sorry, I had a huge project with Jen for science curriculum that took all day! I have to take my son to get fitted for an instrument. I will look at this the next few days and get back to you. I saw the deadline and accepted it. ☺

Thanks for all you are doing. It is exciting.

I will connect again soon,

Katie

**From:** Rachel Damiano <rdamiano@grantspass.k12.or.us>
**Sent:** Wednesday, March 10, 2021 1:59 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** FW: State Board of Education Meeting on March 18, 2021

I think this timeline is doable, at least for the document. What do you think?

I shared this with you too but in case you didn't get it because it came from a different email address, here is a rough mid draft: https://docs.google.com/document/d/1XNgo-86MVuM3QMDdLvKik94RSDLTlqOZMDX1w67EvsM/edit?usp=sharing

**From:** Oregon Department of Education [mailto:ode@public.govdelivery.com]
**Sent:** Wednesday, March 10, 2021 10:24 AM
**To:** Rachel Damiano <rdamiano@grantspass.k12.or.us>
**Subject:** State Board of Education Meeting on March 18, 2021

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Having trouble viewing this email? View it as a Web page.



OREGON
DEPARTMENT OF EDUCATION
BOARD of EDUCATION

## State Board of Education Meeting

**Thursday, March 18, 2021**
**9:00 a.m.**

**Plaintiff 5617**

**Vickers Declaration**
**Exhibit 2 Page 23 of 66**

<u>Video Conference Only</u>

The State Board of Education will hold a Regular Meeting on **Thursday, March 18, 2021 at 9:00 a.m.**

To comply with the Governor's executive orders, the State Board of Education will conduct the March 18, 2021 meeting by video conference only. Members of the public may <u>watch the board meeting live</u>.

**Agendas and materials** for regular board meetings will be posted at least 24 hours prior to the board meeting and can be accessed at <u>Boardbook</u>.

## Public Comment

**Please note:** The Board will only accept written public comment for the March 18, 2021 meeting. The Board is committed to the public comment process and will consider all public comments. Members of the public may submit written comments or testimony to the State Board email address:

<u>StateBoard.PublicEmail@ode.state.or.us</u>; or by mail addressed to the State Board of Education: 255 Capitol Street NE, Salem, OR 97310.

- Clearly label the subject line as: "Public comment" or "Testimony" and include the topic. Example: "Public Comment: Assessment."
- All written public comment will be posted to <u>Boardbook</u>.
- Public comments or testimony submitted the morning of the Board meeting or during the Board meeting will be posted to <u>Boardbook</u> within 48 business hours.

The Board sincerely appreciates your input, and thanks you for your participation.

Corey Rosenberg
State Board of Education Administrator

Stay Connected with the <u>Oregon Department of Education</u>

  

SUBSCRIBER SERVICES:
<u>Manage Subscriptions</u> | <u>Help</u>

*It is a policy of the State Board of Education and a priority of the Oregon Department of Education that there will be no discrimination or harassment on the grounds of race, color, sex, marital status, religion, national origin, age, sexual orientation, or disability in any educational programs, activities or employment. For more information, <u>visit the Anti-Discrimination Policy page</u>.*

<u>rdamiano@grantspass.k12.or.us</u>



**Plaintiff 5618**

**Vickers Declaration**
**Exhibit 2 Page 24 of 66**

**Katie Medart** 
RE: Copy of Resolution 2021-01 - Invitation to edit
March 15, 2021 at 4:26 PM
Christopher Jelderks

https://www.natlawreview.com/article/transgender-students-and-title-ix-biden-administration-signals-shift

"While the EO does not specifically rescind any specific order or action, its broad mandate that agencies review existing programs and policies likely will lead to updated guidance, enforcement priorities, and rules implementing Title IX and other laws prohibiting sex discrimination.

What should schools do now?

The current administration will likely implement major changes related to discrimination on the basis of sexual orientation or transgender status. This may include requiring schools to allow students to use bathrooms and locker rooms that are consistent with their gender identity, and to play on athletic teams that are consistent with their gender identity. Additionally, schools can expect more robust federal agency investigation of complaints of discrimination based on gender identity and sexual orientation."

**From:** Christopher Jelderks <cjelderks@grantspass.k12.or.us>
**Sent:** Monday, March 15, 2021 4:11 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Copy of Resolution 2021-01 - Invitation to edit

Didn't Biden just sign a big executive order allowing trans students to use what restroom they want?

Sent from my iPhone

On Mar 15, 2021, at 3:00 PM, Katie Medart (via Google Docs) <drive-shares-noreply@google.com> wrote:

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

kmedart@grantspass.k12.or.us has invited you to **edit** the following document:



**Plaintiff 5227**



Copy of Resolution 2021-01

Open in Docs

☐oogle Docs: Create and edit documents online.

☐oogle ☐☐C, 1600 ☐mphitheatre Parkway, Mountain ☐iew, C☐ 9404☐, ☐S☐

☐ou have received this email because kmedart@grantspass.k12.or.us shared a document with you from ☐oogle Docs.

**Plaintiff 5228**

**Katie Medart**
FW: Copy of Resolution 2021-01 - Invitation to edit
March 16, 2021 at 9:09 AM
Rachel Damiano

FYI

**From:** Christopher Jelderks <cjelderks@grantspass.k12.or.us>
**Sent:** Tuesday, March 16, 2021 9:05 AM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Copy of Resolution 2021-01 - Invitation to edit

- **A public school student seeking to be referred to by a pronoun that is counter to their apparent anatomical presentation,**
- **such as in relation to such youth presenting apparent gender dysphoria (previously 'gender identity disorder', aka, identifies as transgender), should be reasonably accommodated by public school's staff provided with parent permission, however, that any**
- **such policy shall not be mandated upon or required of the public school's staff nor shall any such policy be enacted**
- **that infringes upon the public school's staffs' civil and constitutional liberties, including their freedoms of speech and expression.**

So, I thought that this was about NOT calling a kid a different name without parent permission.....now it seems the language is pushing for teachers and staff to do what they feel is morally or religiously correct.....that may open up a whole basket of worms....what happens if the person is wacky????? what happens is the person does not want to call kids their regular names?

This resolution is a whole lot broader than just the initial thought...why is that?

Sent from my iPhone

On Mar 15, 2021, at 4:26 PM, Katie Medart <kmedart@grantspass.k12.or.us> wrote:

https://www.natlawreview.com/article/transgender-students-and-title-ix-biden-administration-signals-shift

"While the EO does not specifically rescind any specific order or action, its broad mandate that agencies review existing programs and policies likely will lead to updated guidance, enforcement priorities, and rules implementing Title IX and other laws prohibiting sex discrimination.

What should schools do now?

Plaintiff 5231

Vickers Declaration
Exhibit 2 Page 27 of 66

What should schools do now?

The current administration will likely implement major changes related to discrimination on the basis of sexual orientation or transgender status. This may include requiring schools to allow students to use bathrooms and locker rooms that are consistent with their gender identity, and to play on athletic teams that are consistent with their gender identity. Additionally, schools can expect more robust federal agency investigation of complaints of discrimination based on gender identity and sexual orientation."

**From:** Christopher Jelderks <cjelderks@grantspass.k12.or.us>
**Sent:** Monday, March 15, 2021 4:11 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Copy of Resolution 2021-01 - Invitation to edit

Didn't Biden just sign a big executive order allowing trans students to use what restroom they want?

Sent from my iPhone

> On Mar 15, 2021, at 4:04 PM, Katie Medart (via Google Docs) <drive-shares-noreply@google.com> wrote:

**Email caution from the Grants Pass School District Email**

**Filter: This email originated from outside GPSD7. Do NOT**

**click links or open attachments unless you know the content**

**is safe, and you trust the sender.**

kmedart@grantspass.k12.or.us has invited you to **edit** the following document:



Copy of Resolution 2021-01
<image001.png>
Open in Docs

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain
View, CA 94043, USA
You have received this email because

Google™

Plaintiff 5232

kmedart@grantspass.k12.or.us shared a document with
you from Google Docs.

Plaintiff 5233

**Rachel Damiano**
RE: Copy of Resolution 2021-01 - Invitation to edit
March 16, 2021 at 9:46 AM
Katie Medart

RD

The parent permission aspect is fixed now. I am glad you guys caught that! I think we do need to leave it up to the discretion of the teacher as well though. Otherwise we risk restricting the same freedom of speech that we are fighting for.

Do you know what he means by the resolution being broader than he thought?

**From:** Katie Medart
**Sent:** Tuesday, March 16, 2021 9:10 AM
**To:** Rachel Damiano <rdamiano@grantspass.k12.or.us>
**Subject:** FW: Copy of Resolution 2021-01 - Invitation to edit

FYI

**From:** Christopher Jelderks <cjelderks@grantspass.k12.or.us>
**Sent:** Tuesday, March 16, 2021 9:05 AM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Copy of Resolution 2021-01 - Invitation to edit

> **A public school student seeking to be referred to by a pronoun that is counter to their apparent anatomical presentation,**
> **such as in relation to such youth presenting apparent gender dysphoria (previously 'gender identity disorder', aka, identifies as transgender), should be reasonably accommodated by public school's staff provided with parent permission, however, that any**
> **such policy shall not be mandated upon or required of the public school's**
> <u>**staff nor shall any such policy be enacted**</u>
> **that infringes upon the public school's staffs' civil and constitutional liberties, including their freedoms of speech and expression.**

So, I thought that this was about NOT calling a kid a different name without parent permission.....now it seems the language is pushing for teachers and staff to do what they feel is morally or religiously correct.....that may open up a whole basket of worms....what happens if the person is wacky????? what happens is the person does not want to call kids their regular names?

This resolution is a whole lot broader than just the initial thought...why is that?

Sent from my iPhone

On Mar 15, 2021, at 4:26 PM, Katie Medart <kmedart@grantspass.k12.or.us>

**Plaintiff 5234**

**Vickers Declaration**
**Exhibit 2 Page 30 of 66**

wrote:

https://www.natlawreview.com/article/transgender-students-and-title-ix-biden-administration-signals-shift

"While the EO does not specifically rescind any specific order or action, its broad mandate that agencies review existing programs and policies likely will lead to updated guidance, enforcement priorities, and rules implementing Title IX and other laws prohibiting sex discrimination.

What should schools do now?

The current administration will likely implement major changes related to discrimination on the basis of sexual orientation or transgender status. This may include requiring schools to allow students to use bathrooms and locker rooms that are consistent with their gender identity, and to play on athletic teams that are consistent with their gender identity. Additionally, schools can expect more robust federal agency investigation of complaints of discrimination based on gender identity and sexual orientation."

**From:** Christopher Jelderks <cjelderks@grantspass.k12.or.us>
**Sent:** Monday, March 15, 2021 4:11 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Copy of Resolution 2021-01 - Invitation to edit

Didn't Biden just sign a big executive order allowing trans students to use what restroom they want?

Sent from my iPhone

On Mar 15, 2021, at 4:04 PM, Katie Medart (via Google Docs) <drive-shares-noreply@google.com> wrote:

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

kmedart@grantspass.k12.or.us has invited you to **edit** the following document:



**Plaintiff 5235**



Copy of Resolution 2021-01
<image001.png>

Open in Docs

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain
View, CA 94043, USA
You have received this email because
kmedart@grantspass.k12.or.us shared a document with
you from Google Docs.

Google™

Plaintiff 5236



**Katie Medart**
Fwd: Copy of Resolution 2021-01
March 17, 2021 at 5:07 PM
Rachel Damiano

Get Outlook for iOS

**From:** Dorothy Swain (Google Docs) <comments-noreply@docs.google.com>
**Sent:** Wednesday, March 17, 2021 5:00 PM
**To:** Katie Medart
**Subject:** Copy of Resolution 2021-01

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Dorothy Swain added comments to the following document

📄 Copy of Resolution 2021-01

New
7 comments

## Comments

objective

Dorothy Swain    New

I would continue to use self-evident here, rather than objective - I don't think they are synonymous.

Reply                                              Open

'postmodernism'

**Plaintiff 3765**

**Vickers Declaration**
**Exhibit 2 Page 33 of 66**



Dorothy Swain    New

I think the "post-modernism" connection is the weakest part of this. I would delete the entire segment.

Reply                                                        Open

public education is established, funded, and ordained to teach objective truths

Dorothy Swain    New

Do you have a citation for this?

Reply                                                        Open

antithetical

Dorothy Swain    New

antithetical needs an object - antithetical to what?

Reply                                                        Open

ideology

Dorothy Swain    New

opinion isn't necessarily ideology

Reply                                                        Open

mirrors the rise of postmodernism ideology

Dorothy Swain    New

**Plaintiff 3766**



needs a citation - the critique of postmodern ideology is just as subjective as postmodernism itself

Reply                                                                 Open

opening a discussion to the mental health of a youth believing they are the opposite gender of their anatomy

Dorothy Swain    New

gender is not sex - gender is social - this phrase seems downright mean-spirited to me

Reply                                                                 Open

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

You have received this email because you are a participant in the updated discussion threads. Change what Google Docs sends you. You can not reply to this email.



**Plaintiff 3767**

**Vickers Declaration**
**Exhibit 2 Page 35 of 66**

 

**From:** Rachel Damiano (Google Docs)
**Subject:** Copy of Resolution 2021-01
**Date:** March 18, 2021 at 1:49 PM
**To:**

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Rachel Damiano resolved comments in the following document

📄 Copy of Resolution 2021-01

Resolved
6 comments

# Resolved

Comments

objective

Dorothy Swain

I would continue to use self-evident here, rather than objective – I don't think they are synonymous.

Rachel Damiano    New

☐arked as resol☐ed

Reply                                                    Open

'postmodernism'

Plaintiff 3768



postmodernism

Dorothy Swain

I think the "post-modernism" connection is the weakest part of this. I would delete the entire segment.

Rachel Damiano    New

Marked as resolved

Reply                                    Open

antithetical

Dorothy Swain

antithetical needs an object - antithetical to what?

Rachel Damiano    New

Marked as resolved

Reply                                    Open

ideology

Dorothy Swain

opinion isn't necessarily ideology

Rachel Damiano    New

Marked as resolved

Reply                                    Open

mirrors the rise of postmodernism ideology

Plaintiff 3769



Rachel Damiano    New

Marked as resolved

Reply                                                    Open

opening a discussion to the mental health of a youth believing they are
the opposite gender of their anatomy

Rachel Damiano    New

Marked as resolved

Reply                                                    Open

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA
94043, USA

You have received this email because you are a participant in the
updated discussion threads. Change what Google Docs sends
you. You can not reply to this email.

Plaintiff 3770

**Katie Medart (Google Docs)**
Resolution 2021-01.2 - Add: "essentially"
March 19, 2021 at 1:56 PM



Katie Medart added a suggestion to the following document

 Resolution 2021-01.2

Katie Medart  New

**Add:** *essentially*

Open

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA
94043, USA

You have received this email because you are subscribed to all
discussions on Resolution 2021-01.2. Change what Google Docs
sends you. You can reply to this email to reply to the discussion.



**Plaintiff 5417**

**Vickers Declaration
Exhibit 2 Page 39 of 66**

**Rachel Damiano (Google Docs)**
Resolution 2021-01.2 - Add: "essentially"
March 19, 2021 at 3:49 PM



**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Rachel Damiano accepted a suggestion in the following document

Resolution 2021-01.2

Katie Medart

**Add:** essentially

Rachel Damiano    New

*Accepted suggestion*

Open

Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

You have received this email because you are a participant in this thread. Change what Google Docs sends you. You can reply to this email to reply to the discussion.



**Plaintiff 5418**

From: **Rachel Damiano (via Google Sites)**
Subject: I Resolve - Invitation to edit
Date: March 19, 2021 at 4:17 PM
To:



**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following site:

## ! Resolve

The resources page is currently hidden but I think we can start adding to it and, when we are ready, unhide it for people to have access to.

Open

iresolve.gp@gmail.com is outside your organization.

Google Drive: Have all your files within reach from any device.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA

Plaintiff 4657

Vickers Declaration
Exhibit 2 Page 41 of 66

**From:** Rachel Damiano (via Google Sheets) 
**Subject:** Sign Resolution 2021-01 (Responses) - Invitation to edit
**Date:** March 19, 2021 at 5:29 PM
**To:**

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following spreadsheet:

 Sign Resolution 2021-01 (Responses)

Open in Sheets

iresolve.gp@gmail.com is outside your organization.

Google Sheets: Create and edit spreadsheets online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because iresolve.gp@gmail.com shared a
spreadsheet with you from Google Sheets.



Plaintiff 5593

**Katie Medart** 
RE: Copy of Resolution
March 22, 2021 at 4:46 PM
Swain, Dorothy

Hi, Dorothy,

Thank you for your time and constructive criticism. I value and appreciate it. I am collaborating with a colleague here at North on the resolution. At this time, not all of your recommendations were implemented, but I wanted to share the current version on our website: https://sites.google.com/view/iresolve/home

I hope you will see you made an impact. Thank you for making it better.  Please relay to Gary that I appreciate his time and heart felt words, as well.

You will notice on the digital form (which you can click on without signing) that we separated the resolutions (policies) we are advocating for from the why. We recognize community members may support the policies and believe they are fair in form and function, but not agree with our reason why we are advocating for them.  Our website is still under construction. I recommend checking back periodically to see what we have updated.

I miss you dearly too, and I still rave about you, but now to my current colleagues instead of my biology and A&P students. ☺

I hope this week is restful,

Katie

Oh… congrats on retirement! I am so excited and wish I could join!!

**From:** Swain, Dorothy <DSwain@roguecc.edu>
**Sent:** Wednesday, March 17, 2021 5:13 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Copy of Resolution

**Email caution from the Grants Pass School District Email Filter: This email
originated from outside GPSD7. Do NOT click links or open attachments unless
you know the content is safe, and you trust the sender.**

Hi, Katie,
   I got your Google Doc, and I am honored by your request. I made a few comments on the Google drive. I think that the requests at the end are mostly fair and coherent. The weakest parts for me are in the preliminaries: the equating of "self-evident" truths in the Constitution with the "objective" truths you wish to establish, as well as the attack on post-modernism and the attempt to establish gender fluidity as a mental illness. I think that some people who don't agree with you about mental illness and post-modernism might very well agree to sign your petition if those parts were omitted or softened. Also, you get into this slippery

**Plaintiff 3788**

territory where your attacks are just as subjective as the ideology you wish to reject.

I miss you dearly, and I wish we still had the regular opportunity to chat!

All the best,
Dorothy

**This next part is from Gary**:

*We are in the process of figuring out how to accommodate those people who identify as something other than traditional definitions. Just as we are coming to understand the depth of racism, we need to remain open to all of the variations of the human being. When we think we understand what "objective truth" is we should take a long look at our motivations. "Separate but equal" was used to justify conditions in the United States for many generations that were never equal. Our understanding of mind-body processes is constantly evolving. Middle school and high school students are indeed trying to figure out who they are and how they fit into the world.*

*We must always practice kindness. This is a teachable moment for the adults as well as the students. When we label a student with political, pseudo-scientific language like "postmodern" we are pointing a finger at their heart. We are saying they are defective.*

*There is an opportunity to show all students how we treat each other. Pretending to understand what "objective truth" is, and whose ideology is correct, only makes it harder to see that individual and their struggle toward selfhood. People trying to figure out how to adjust accommodations is a nationwide puzzle at the moment. The opportunity to be positive role models is at our door.*

*We must always practice kindness.*

Dorothy Swain
Science Faculty
Rogue Community College
3345 Redwood Highway
Grants Pass, OR  97527
(541)-956-7069
Fax (541)-471-3563

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. This e-mail was sent in good faith to the address you provided to Rogue Community College. We trust that you have password-protected access to this e-mail account and that any transmitted confidential information is secure. If you are not the named addressee, you should not disseminate, distribute, or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail message by mistake, and then delete this e-mail and any attachments from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing, or taking any action in reliance on the contents of this information is strictly prohibited.

Plaintiff 3789

**Rachel Damiano (via Google Docs)**
Layman's Terms Resolution 2021-01 - Invitation to edit
March 22, 2021 at 7:31 PM



**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following document:

Layman's Terms Resolution 2021-01

Open in Docs

iresolve.gp@gmail.com is outside your organization.

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because iresolve.gp@gmail.com shared a
document with you from Google Docs.

Google™

Plaintiff 4807

Vickers Declaration
Exhibit 2 Page 45 of 66

**Katie Medart**

I Resolve
March 22, 2021 at 4:33 PM
Katie Medart

https://sites.google.com/view/iresolve/home

Get Outlook for iOS

Plaintiff 4665

Vickers Declaration
Exhibit 2 Page 46 of 66

**Katie Medart** 
Check it out
March 24, 2021 at 8:52 AM
Christopher Jelderks

Hi, Jelly!

Check out our website at www.iresolvemovement.com

We would like for you to submit a video before Saturday if you are willing? Text or call me at 5414412222 and I will go over details!

God is good!
Katie

Get Outlook for iOS

**Plaintiff 3647**

**Vickers Declaration
Exhibit 2 Page 47 of 66**

**Rachel Damiano** 
Fw: Revised!
March 25, 2021 at 2:24 PM
Katie Medart

I don't have any changes but let me know if you see something! I want to get it on Youtube today to post to the site and start sending out everywhere. 🙂

*Rachel Damiano*
Assistant Principal, North Middle School
Canvas Support
Admin Lead for GP Online (Middle School)

*Confidentiality Notice: This email and any attachments may contain confidential and privileged information intended for the addressee only. If you are not the addressee, or if you have received this email by mistake, please delete it immediately.*

**From:** Johnie Collins <johnie@edgewaterfellowship.org>
**Sent:** Thursday, March 25, 2021 1:41 PM
**To:** Rachel Damiano <rdamiano@grantspass.k12.or.us>; Josh Cunningham <josh@edgewaterfellowship.org>
**Subject:** Revised!

**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Hey Rachel,

Here is the revised edit. Thank you for taking the time to look over the last one and make notes on it. Please share with Katie and look this one over and let me know if it can improve. Thank you!

https://www.dropbox.com/s/r1grn0suw0n4nw6/iresolveREVedit_exp2.mn4?dl=0

--



Plaintiff 4343

**Rachel Damiano**
Re: Revised!
March 25, 2021 at 3:02 PM
Johnie Collins                                    , Josh Cunningham                              , Katie Medart



It looks great! Thank you so much for all the work you guys did. We feel very blessed to have had this opportunity.

I will upload it to Youtube and embed it on the site.

Have a wonderful day!

*Rachel Damiano*
Assistant Principal, North Middle School
Canvas Support
Admin Lead for GP Online (Middle School)

*Confidentiality Notice: This email and any attachments may contain confidential and privileged information intended for the addressee only. If you are not the addressee, or if you have received this email by mistake, please delete it immediately.*

**From:** Johnie Collins <johnie@edgewaterfellowship.org>
**Sent:** Thursday, March 25, 2021 1:41 PM
**To:** Rachel Damiano <rdamiano@grantspass.k12.or.us>; Josh Cunningham <josh@edgewaterfellowship.org>
**Subject:** Revised!

**Email caution from the Grants Pass School District Email Filter: This email**

**originated from outside GPSD7. Do NOT click links or open attachments unless**

**you know the content is safe, and you trust the sender.**

Hey Rachel,

Here is the revised edit. Thank you for taking the time to look over the last one and make notes on it. Please share with Katie and look this one over and let me know if it can improve. Thank you!

https://www.dropbox.com/s/r1grn0suw0n4nw6/iresolveREVedit_exp2.mp4?dl=0

--



**Plaintiff 4344**

**Rachel Damiano**
Updates on Resolution 2021-01
March 26, 2021 at 2:50 PM
Matt Heverly                    , Kerry Alderson



**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

Hi Matt and Kerry,

Thank you again for your support for the resolution regarding gender identity policies for youth. The video team was amazing to work with and they did a great job filming and editing! If you haven't gotten a chance to take a look, the video is posted on the website: iresolvemovement.com

Do you have any ideas on how we could continue to get the word out and increase momentum for the resolution? We posted the video yesterday evening and have 92 views so far and 23 signatures on the new form (we switched from a google form to an Adobe signature form) and 34 signatures from the Google form. We are reaching out to organizations and individuals that are influencers in policies (ALEC, Prager U, Ben Shapiro) to garner their support as well.

We appreciate any feedback or ideas you have for us. Thank you!

Sincerely,
Rachel and Katie

Plaintiff 5990

**Rachel Damiano** 
Proposed Policy regarding Gender Identity Policies as they pertain to Schools
March 26, 2021 at 2:31 PM



## Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.

Dear Mr. Reynolds,

We appreciate the work that ALEC does to develop fair policies that are, as stated in the mission statement, "dedicated to the principles of limited government, free markets, and federalism." As such, we would be honored if the Education Task Force would consider our resolution as an alternative policy option to proposed wording in the Equality Act or other state legislation regarding gender identity policies.

We feel the Equality Act, as well as Oregon state proposed legislation, restricts freedoms for US citizens and businesses and puts requirements on education institutions that will have negative effects on our youth. Specifically, allowing the use of restrooms and locker rooms based on gender identity, mandating the use of preferred names and preferred pronouns, and not requiring parent involvement in the process, have been shown to be damaging to the mental, physical and emotional health of youth.

We are requesting that the task force review our proposed resolution and adopt the policy points to then be put forth at the state and federal levels by legislators. The resolution, our reasoning, and many of our research based resources can be found on our website: iresolvemovement.com On the site, we also have a Youtube  link to our video explaining the need for this resolution and have outlined the resolutions below. We appreciate any feedback you or the committee may have for us regarding our proposal.

*We aim to propose policy standards that are fair, reasonable and that safeguard liberties and freedoms of all parties involved. In our current times, gender identity is a hot button topic in politics but the resolution*
*below moves away from an argument about "right" or "wrong". It instead focuses on ways in which we can be respectful to all parties involved, while ultimately protecting the hearts and minds of our youth.*

*Therefore, be it resolved that we urge our local, state and federal leaders to adopt the following principles and policies:*

- *We*
  *recognize that, excepting very rare scientifically-demonstrable medical conditions, there are two anatomical gender presentations,*
  *male and female;*

- *Shared public-school restrooms and locker rooms, previously designated by "gender" (e.g.*
  *"boys" and "girls" designations) could be re-designated as "anatomically-male" or "anatomically-female" spaces to only be used*
  *by persons matching the anatomical designation of the spaces as consistent*
  *with the purpose for which the spaces are built;*

- *For any person who is not comfortable using their anatomically-correct space, they may request*
  *access to a private restroom or locker room space, including designated staff spaces,*
  *to the extent that such spaces exist and are available;*

- *A student may, with parent permission, request to be called by a derivative of their legal*
  *name but it will not be mandated that students or staff be required to call the student by their preferred name;*
  *and*

- *A student may, with parent permission, request to be referred to with preferred*
  *pronouns, but it will not be mandated that students or staff be required to use the preferred pronouns.*

We thank you for your time and attention to this matter.

**Plaintiff 5177**

Sincerely,
Rachel Damiano and Katie Medart
Southern Oregon Assistant Principal and Southern Oregon Science Teacher

Plaintiff 5178

**Katie Medart** 
Website blocked
March 29, 2021 at 8:30 AM
Rachel Damiano

Good Morning,

Can we have our website unblocked?



## Web Page Blocked!



You have tried to access a web page which is in violation of your internet usage policy.

URL: http://www.iresolvemovement.com/
Category: Newly Observed Domain
User name:
Group name:

To have the rating of this web page re-evaluated please click here.

Plaintiff 6061

**Vickers Declaration
Exhibit 2 Page 53 of 66**

**Rachel Damiano**
FW: URL Rating Update Notification: Mon, 29 Mar 2021 10:11:28 -0700
March 29, 2021 at 10:18 AM
Katie Medart



The site should be viewable now. :)

-----Original Message-----
From: FortiGuard Web Filtering Service [mailto:fgweb@fortinet.com]
Sent: Monday, March 29, 2021 10:11 AM
To: Rachel Damiano <rdamiano@grantspass.k12.or.us>
Subject: URL Rating Update Notification: Mon, 29 Mar 2021 10:11:28 -0700

Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.

Dear Fortinet customer,

The website(s) you submitted below has been reviewed and updated:

Submission Date:       Mon, 29 Mar 2021 08:34:06 -0700
URL:                   hxxp://www[.]iresolvemovement[.]com/
Customer Comment:      https://linkprotect.cudasvc.com/url?
a=https%3a%2f%2firesolvemovement.com&c=E,1,sj60CStli29Xl0cHBBsrx8AXqZMhw8xwQi5Thk-0pFxi_YuDFGbJs-CoJhGp6bxGrs-
L1IrrnE6SeTyF-FkT19cMKpGChcSMjbF_HlnjIOXNYGExcXrk&typo=1 is a redirect to a google site. The google site was created by
me and although the domain is new, the site itself is safe.
Updated Category:      Advocacy Organizations
Update Date:           Mon, 29 Mar 2021 10:10:08 -0700

If the suggested category does not meet your expectation, kindly contact us through https://linkprotect.cudasvc.com/url?
a=http%3a%2f%2fwww.fortiguard.com%2fcontactus.html%2c&c=E,1,pKK2gY04d_ZGiSPVh4f3VOsVZcWhviIDIgQBYphHJDn6aht5yv
dvCMIFr8M1UlJVy3OtmAnehpTF3YlBtHfBmmY8uvduPZmwEY_dxwf0yZQ8B6IZ&typo=1 our Web Filtering team would be happy to
assist you.

Note that FortiGuard Web Filtering Service categorizes websites, but it is your IT manager who decides what categories to block or
allow. Therefore, if you would like access to the site, please contact your IT manager.

The rating update may not be effective immediately on your network because of the Web filtering cache. If you would like to have the
update effective immediately, please contact your network administrator.

Thank you for using FortiGuard Web Filtering Service.

Regards,

FortiGuard Web Filtering Service
Fortinet Inc.

This is an automatically generated notification of rating update.
Please do not reply to this email.

*** Please note that this message and any attachments may contain confidential and proprietary material and information and are
intended only for the use of the intended recipient(s). If you are not the intended recipient, you are hereby notified that any review,
use, disclosure, dissemination, distribution or copying of this message and any attachments is strictly prohibited. If you have received
this email in error, please immediately notify the sender and destroy this e-mail and any attachments and all copies, whether electronic
or printed. Please also note that any views, opinions, conclusions or commitments expressed in this message are those of the
individual sender and do not necessarily reflect the views of Fortinet, Inc., its affiliates, and emails are not binding on Fortinet and only
a writing manually signed by Fortinet's General Counsel can be a binding commitment of Fortinet to Fortinet's customers or partners.
Thank you. ***

Plaintiff 4352

**Rachel Damiano (via Google Docs)**
Untitled document - Invitation to edit
March 29, 2021 at 1:39 PM



**Email caution from the Grants Pass School District Email Filter: This email originated from outside GPSD7. Do NOT click links or open attachments unless you know the content is safe, and you trust the sender.**

iresolve.gp@gmail.com has invited you to **edit** the following document:

Untitled document

Open in Docs

iresolve.gp@gmail.com is outside your organization.

Google Docs: Create and edit documents online.
Google LLC, 1600 Amphitheatre Parkway, Mountain View, CA 94043, USA
You have received this email because iresolve.gp@gmail.com shared a document with you from Google Docs.

**Katie Medart** 
Policy
March 30, 2021 at 1:52 PM
Mitch Meunier                                   , Jason Wright

KM

Hi, Mitch and Jason,

Thank you for the time today! Here is the website: https://www.iresolvemovement.com/

Please let me know if you have any questions,

Katie

**Plaintiff 5068**

**Vickers Declaration**
**Exhibit 2 Page 57 of 66**

**Katie Medart** 
RE: Policy
March 31, 2021 at 8:45 AM
Jason Wright

Thank you for taking action! I really hope and believe if we all have our voice heard we will make change occur. The challenge is having courage and taking the time to take action.

Have a wonderful day,
Katie

**From:** Jason Wright <JWRIGHT@grantspass.k12.or.us>
**Sent:** Tuesday, March 30, 2021 6:44 PM
**To:** Katie Medart <kmedart@grantspass.k12.or.us>
**Subject:** Re: Policy

Thank You Katie. I just signed it.

Get Outlook for iOS

**From:** Katie Medart <kmedart@grantspass.k12.or.us>
**Sent:** Tuesday, March 30, 2021 1:52:47 PM
**To:** Mitch Meunier <MMEUNIER@grantspass.k12.or.us>; Jason Wright <JWRIGHT@grantspass.k12.or.us>
**Subject:** Policy

Hi, Mitch and Jason,

Thank you for the time today! Here is the website: https://www.iresolvemovement.com/

Please let me know if you have any questions,

Katie

Plaintiff 5070

April 5, 2021

HAND DELIVERED

Dear Katie Medart:

This letter is to formally notify you that you are being placed on paid leave effective today, April 5, 2021, pending investigation into allegations of inappropriate behavior.  You will be permitted to be at the District for interviews.

A meeting will be scheduled at which time you will have the opportunity to present your side of the story.  This leave in no way is to be construed that you are guilty of said allegations.  You will be notified when we have scheduled the date and time of the meeting.

Sincerely,

Tommy Blanchard
Principal

cc:  Kirk Kolb
     Mickey Jarvis
     Personnel File
     Payroll



**Plaintiff 1212**

**Vickers Declaration**
**Exhibit 2 Page 59 of 66**



**Grants Pass School District No. 7**

725 NE Dean Drive, Grants Pass, OR 97526 · Phone: (541) 474-5703
www.grantspass.k12.or.us · Fax: (541) 474-5705

OFFICE of BUSINESS SERVICES

June 4, 2021
Katie Medart
224 NW Canyon View Drive
Grants Pass, OR 97526

RE: Investigation Findings and Recommendation for Termination

Dear Katie,

An investigation was conducted by Bill Landis at the request of the District regarding the allegations that you violated several District Policies – the findings of which you received a copy of this morning and are included below.

"ALLEGATION #1: In March/April of 2021, it is alleged that Grants Pass School District 7 North Middle School Teacher Katie Medart was involved in a campaign of a political nature non-sanctioned by Grants Pass School District 7 where Ms. Medart is alleged to have:

A. Used District facilities, equipment or supplies in connection with the political campaign. **"SUSTAINED"-** Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"No employee will use district facilities, equipment or supplies in connection with political campaigning, nor will any employee use any time during the working day for campaign purposes."* Grants Pass School District 7 policy IIBGA-AR "Electronic Communications System Acceptable Use Regulation" (Exhibit 7E) states that *"Attempts to use the District network for Transmission of any materials regarding political campaigns is strictly prohibited."* The stated purpose of the "I Resolve" campaign was to address gender identity policies as was stated in their video and message. The "I Resolve" campaign stated in the video that it was specifically targeting the Equality Act, Oregon Senate Bill 52, and other legislation that was in the process of being voted on, developed, or proposed in legislative bodies at the Federal, State, and local levels as the "I Resolve" video explains. In the video, Ms. Medart and Ms. Damiano ask that viewers reach out to contact Senators where the next vote is scheduled and attend an ODE meeting that was scheduled for April 15th, 2021 in order to have their voices heard lobbying for support of the "I Resolve" resolutions that would modify or change the pending legislation as it had been written.

Ms. Medart by her own admission used District 7 computers, email, school property, and Google Docs to share or communicate regarding the "I Resolve campaign with colleagues, staff, and persons inside and outside of School District 7. This was supported by Exhibits provided regarding email use under Exhibit 4 which were some of the emails provided by the District 7 IT Department. While Ms. Medart did not like referring to "I Resolve" as a political campaign, her efforts both in the video regarding legislation and through the use of District 7 email and face to face contacts on campus to gain support for the "I Resolve" resolutions were determined to be political campaigning which occurred on District 7 School grounds. The goal of "I Resolve" was to influence legislators regarding pending policies and legislation with their own resolution that would define who could use what bathrooms based on one's anatomy, legislate the use of names and

*Building Bridges to the Future*



GPSD 629

**Vickers Declaration**
**Exhibit 2 Page 60 of 66**

pronouns for gender identity students, and require parents be involved in a student's gender identity journey. It should be noted that this allegation would not have been sustained had Ms. Medart have chosen to not use District 7 facilities, email, equipment, or supplies for her "I Resolve" campaign.

B.  Used time during her working day for political campaign purposes. **"SUSTAINED"-** Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"No employee will use district facilities, equipment or supplies in connection with political campaigning, nor will any employee use any time during the working day for campaign purposes."* As stated under Allegation 1A above, the "I Resolve" campaign was determined to be a political campaign. Time stamps on emails shown in Exhibit 4 as well as Ms. Medart's admission that she used time during her workday to communicate regarding "I Resolve" both in emails and face to face communications with other District 7 staff and persons outside of District 7. Ms. Medart stated that the time was minimal however besides email and face to face communications, she also admitted using District 7 computers to work on "I Resolve." Without a forensic computer analysis there is no way to quantify the actual time. The policy does not require a certain amount of time in order to violate it, it states: "nor will any employee use any time during the working day for campaign purposes" which did occur on more than one occasion. Had Ms. Medart not utilized time during her workday for the "I Resolve" campaign this would not have been a violation.

C.  Failed to designate that the viewpoints she represented on the issues involved in the political campaign, were her personal viewpoints and not that of District 7. **"SUSTAINED"-** Grants Pass School District 7 policy GBG "Staff Participation in Political Activities" (Exhibit 7D) states that *"On all controversial issues, employees must designate that the viewpoints they represent on the issues are personal viewpoints and are not to be interpreted as the district's official viewpoint."* As stated under Allegation 1A, the "I Resolve" campaign was determined to be a political campaign. In the "I Resolve" video, Ms. Medart identifies herself by stating: *"My name is Katie. And my experience with youth is that I have been teaching for the last 10 years. I am currently teaching at a middle school in Southern Oregon, and prior to that for eight years, I was a science instructor for college and then some high school science teaching experience as well. I've been a coach, multiple sports. And then probably my greatest honor of working with youth is that I have two of my own sons."*

Ms. Medart doesn't introduce herself as a private citizen but rather a Southern Oregon Middle School Teacher giving her first name. While she did not say Grants Pass District 7, She at no time in the video states that the views expressed are that of her own and not that of District 7 or any similar type of statement. Ms. Damiano identified herself similarly by saying: *Hi, I'm Rachel and I am an administrator assistant principal in Southern Oregon at the middle school level. I've also worked at the high school level, was previously a math teacher, and I've been working with youth for over a decade now in various roles in education. And then in... as a coach as well.* A simple internet search using "Rachel southern Oregon middle school assistant principal" finds an article identifying Rachel Damiano and her full name, North Middle School, District 7, when she was hired in August of 2020. https://spot.snoregon.com/southern-oregon/517035/gp-district-7-welcomes-damiano-as-new-vice.html. This would have then led someone to easily determine Ms. Medart's identity again since she identified herself by her title. Additionally, Ms. Medart used District 7 email for communications for "I Resolve" to persons inside of District 7 and outside identifying herself as associated with School District 7 with no disclaimer. The media coverage (Exhibits 5A-5E) shows how District 7 was intertwined with Ms. Medart and the "I Resolve" campaign. There media coverage had no statements by Ms. Medart or Ms. Damiano that made it clear that the "I Resolve" campaign was not affiliated with District 7.

**GPSD 630**

Ms. Medart did tell me in my interview with her on May 13th, 2021 that there was a disclaimer on the video associated with YouTube. I did find a disclaimer if a viewer used a drop-down box prior to playing the video. This however was not initially with the video as she admitted in her interview with Dan Huber-Kantola on April 6th, 2021 when she told him that it had been added later and the video itself has nothing a viewer would know isn't just Ms. Medart's view. In the opening statements of the video, Ms. Medart can be heard saying: "I Resolve" and "We Resolve." The fact that there is no differentiation of whether the views or resolution expressed is only hers can be complicated by the word "We" and who else she is referring to. Ms. Medart's story of one of her students coming forward within a few days of the "I Resolve" video being published to ask about the video and wondering if she was homophobic also showed how "I Resolve" was associated with her position as a District 7 teacher. The amount of email complaints, complaints form District 7 employees, and publicity associated shorty after the video and website were published to social media and the internet was representative of how controversial the "I Resolve" proposals and campaign were based upon the responses of many. Had Ms. Medart been clear that the expressed views in the "I Resolve" video and campaign were not those of District 7 then this would not have been a violation of District 7 policy.

D.   Used social media and public websites in such a manner that it disrupted the school environment. **"SUSTAINED"** – Grants Pass School District 7 policy GCAB "Personal Electronic Devices and Social Media-Staff (Exhibit 7C) states that *"Staff members, while on duty and off duty, will treat fellow employees, students and the public with respect while posting on social media websites, etc., in order to prevent substantial disruption in school."* It is clear from the complaints received that the "I Resolve" video posted on YouTube and Facebook, and "I Resolve website created a substantial disruption in school which included student protests, staff complaints, citizen complaints, division among the staff, and was interpreted by some who would be affected by the "I Resolve" resolution as disrespectful.

E.   Posted confidential information about a student on social media and a public website. **"SUSTAINED"**- Grants Pass School District 7 policy GCAB "Personal Electronic Devices and Social Media-Staff (Exhibit 7C) states that *"Staff members, while on duty and off duty, will utilize social media websites, public websites, and blogs: in a professional manner by not posting confidential information about students, staff or district business."* In the "I Resolve" video which was posted on social media and a public website, Ms. Medart disclosed an incident which occurred approximately one year prior within a month of returning to teaching at the K-12 level, she was presented with a female student who was exploring her gender identity and made a request to identify as a male. Lysander Selvig stated he absolutely knew who Ms. Medart was speaking of and disclosed the name of the student to me and circumstances regarding details. His information matched Ms. Medart's disclosure in the "I Resolve" video where the student had contacted teaching staff at North Middle School to request they call her by a different male name and male pronouns. This was corroborated by Principal Tommy Blanchard regarding the student who stated it was common knowledge on campus. Ms. Medart in my in my interview recanted the story as truthful and gave unclear responses to my questions stating that in looking back it was hypothetical although she seemed to indicate she believed the story as well. It is clear that a North Middle School student did exactly what Ms. Medart said occurred regarding gender identity transformation to numerous staff members at the school at the approximate time that Ms. Medart said it had occurred. That student or others viewing the "I Resolve" video as did happen with Mr. Selvig, would have identified the specific student who Ms. Medart spoke of even if she now claimed it was hypothetical.

F.   Created a "bias incident" where her actions as a District employee with regards to the political campaign/movement involved behavior or language which was derogatory and directed at those persons and or students "sexual orientation." **"NOT SUSTAINED"** – Grants Pass School District 7 policy "ACB" (Exhibit 7B) states that *"Bias Incident" means a person's hostile expression of animus toward another person or*

**GPSD 631**

*group of person's, relating to the other person's or group's distinguished, or perceived to be distinguished, race, color, religion, sex, gender identity, sexual orientation, disability or national origin"* It is not clear if Ms. Medart's "I Resolve" campaign was "a hostile expression of animus toward those who use a different gender identity. The "I Resolve" campaign is an attempt to change legislation and policies affecting gender identity. Individuals may perceive her actions as biased which is understandable. However, it is not clear based upon the language of the listed policy that her actions constituted a "bias incident" as there weren't enough facts to positively conclude if the allegation was unfounded or in fact was sustained and did occur.

**Allegation #2:** Between October 2020 and March 2021, Katie Medart discriminated against SPED Teaching Assistant Lysander Selvig who is transgender **"NOT SUSTAINED"** – Grants Pass School District 7 policy "ACB" Nondiscrimination (Exhibit 7A) states that the district prohibits discrimination and harassment on any basis protected by law, including sexual orientation which the policy defines as including an individual's actual or perceived gender identity, appearance, expression or behavior differs from that traditionally associated with the individual's sex at birth. Mr. Selvig alleges that he was discriminated against by Ms. Medart when she refused to use his new name and asked him not to use his name with her class, had him work remotely rather than in her class as a SPED assistant making it difficult to do his job, and removed his status in the school network as a SPED assistant which reduced his ability to access information to help students. The emails I located where he and Ms. Medart communicated between October 2020 and April 2021 (Exhibit 9) show that she did call him Lysander in several of those emails making it difficult to prove that she didn't want him using that name.

Ms. Medart had another teaching assistant (Ashley Cook) who also was also working remotely. Ms. Medart told me that it was Ms. Cook's idea to work remotely which she thought was a good idea. When I interviewed Ms. Cook, she stated that was not correct and thought it was odd Ms. Medart did not want her assisting students in her classroom. Although Mr. Selvig thought this was discriminatory, I was unable to determine if it was due to his being transgender since Ms. Cook also was asked to work remotely. Mr. Selvig's belief that Ms. Medart had his status changed regarding the school network was not substantiated as he was able to have Mr. Blanchard change his status back and Ms. Medart denied she had changed his status. Ms. Medart's involvement in the "I Resolve" campaign which proposed changes to legislation and policies although offensive to him and others, were not discriminatory as there were no defined discriminatory conduct identified as described by District 7 policy.

**Allegation #3:** On or about March 2021, Ms. Medart created a hostile work environment for North Middle School Librarian Tanika Cooks. **"UNFOUNDED"** – Ms. Cooks alleged that Ms. Medarts created a hostile work environment when she spread rumors that Ms. Cooks and another teacher had discouraged Principal Tommy Blanchard from allowing Ms. Medarts to attend the student LGBTQ club meeting on campus. Ms. Cooks stated that she knew Ms. Medarts told another teacher that and believed she had told others. Ms. Cooks said she felt that others may have thought she had done as Ms. Medart claimed and had something to do with her not being able to attend the LGBTQ club meetings. When I interviewed Ms. Medart, she admitted telling a teacher who was a friend and in frustration however she said she had received information from Tommy Blanchard that Ms. Cooks and another teacher had suggested she not be able to attend. Ms. Cooks could offer no further information or actions related to her feelings of the hostile work environment although she did state she felt the "I Resolve" campaign had made the school campus divisive as a result. Having no other facts to include I was unable to substantiate Ms. Cooks allegation.

In reviewing Ms. Medart's job classification (Exhibit 7F), based upon the facts including conduct, I find she failed to meet the standards in her job description in the overview, her essential responsibilities, and qualifications which included:

- Performs instruction and related duties in accordance with District Policies and terms of the teacher contract
- The ability to effectively work and communicate with students, parents, and school personnel from diverse cultures and/or backgrounds
- The ability to work harmoniously with others
- Maintain the integrity of confidential information relating to students, staff, and district patrons
- Cultivate and model a respectful working and learning environment
- Model personal behaviors of honesty, fairness, courtesy and consideration
- Maintain a cooperative relationship with administration, staff, students and parents
- Demonstrate competency in equity, diversity, and inclusion"

Based on the five (5) sustained Policy violation findings listed above, I am recommending to Superintendent Kolb that he terminate your employment as a Teacher, with Grants Pass School District No. 7.  A pre-termination hearing has been scheduled with Superintendent Kirk Kolb for Tuesday, June 8, 2021 at 9 A.M at the District Office.  You are welcome to bring a representative with you to that hearing.

Respectfully,

Sherry Ely
Chief Finance & Operations Officer

CC:    Mr. Kirk Kolb, Superintendent
       Mr. Danny Huber-Kantola, Human Resources Director
       Mr. Tommy Blanchard, Principal, North Middle School
       Ms. Mickey Jarvis, Association President

**GPSD 633**



# Grants Pass School District No. 7

725 NE Dean Drive, Grants Pass, OR 97526 · Phone: (541) 474-5700
www.grantspass.k12.or.us · Fax: (541) 474-5705

OFFICE of the SUPERINTENDENT

June 18, 2021

Katie Medart
224 NW Canyon View Drive
Grants Pass, OR 97526

RE:  Notice of Recommendation of Termination to the Grants Pass School District 7 Board of Directors

Dear Katie,

You were provided with a notice from Director Sherry Ely on June 4, 2021 of "Investigation Findings and Recommendation for Termination" on the basis of an investigation report conducted by Pacific Consulting and Investigation.

Upon complete review of Director Ely's recommendation for termination and the report conducted Bill Landis of Pacific Consulting and Investigation, I have concluded the following:

- You used District facilities, equipment, and supplies to conduct personal business of a political nature.  This is determined to be a violation of Board Policy GBG as state in both Director Ely's letter and the third-party investigation.
- You used the district network for transmission of the related materials and information of these political campaigning efforts.  This is determined to be a violation of Board Policy IIBGR-AR.
- You used paid District time to engage in the efforts to support and promote a campaign of a political nature.  This determined to be a violation of Board Policy GBG.
- When posting the "I Resolve Movement" video, you failed to identify that your political viewpoints were yours personally and not representative of the District.  This is also determined to be a violation of Board Policy GBG.
- Your personal use of social media very much created a substantial disruption to the school environment.  This is determined to be a violation of Board Policy GCAB.
- You posted confidential student information in your "I Resolve Movement" video.  While not explicitly using the students name, the specific details of the scenario you described was determined to have occurred to the extent that many individuals were able to discern who you were referencing.  It has been verified that this student was enrolled in your class throughout the 2019-2020 school year.  This is also a violation of Board Policy GCAB.

Based on the sustained violations of multiple Board Policies, I am recommending to the Grants Pass School District 7 Board of Directors that they terminate your employment with the district effective immediately.  You have the right to a hearing with the Board.  It is your choice as to whether this hearing

*Building Bridges to the Future*



**GPSD 623**

**Vickers Declaration**
**Exhibit 2 Page 65 of 66**

is to be conducted in executive session or in session open to the public.  In this hearing you will hear the charges being brought forth and recommendation to the Board.  You have a right to have an attorney present and an opportunity to respond and appeal to the Board.

This hearing is scheduled for the next Board meeting on June 22, 2021 as executive session will start at 5:05 PM.  Please let me know if you would like this hearing to be in the open public session or in executive session (closed to the public).

Respectfully,

Kirk T. Kolb
Superintendent
Grants Pass School District 7