


```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF OREGON
                         MEDFORD DIVISION


RACHEL G. DAMIANO and KATIE S.
MEDART

        Plaintiffs,

vs.                              Civil No. 1:21-cv-00859-CL

GRANTS PASS SCHOOL DISTRICT 7,
an Oregon public body, et al.,

        Defendants.
_____




                                                  DEPOSITION OF

                                                    SHERRYL ELY


                                                       TAKEN ON
                                         TUESDAY, JUNE SEVENTH, 2022
                                                      3:04 P.M.


                                       GRANTS PASS SCHOOL DISTRICT
                                           725 NORTHEAST DEAN DRIVE
                                           GRANTS PASS, OREGON 97526
```

Vickers Declaration
Exhibit 6 Page 1 of 8

```
 1              THE WITNESS:  I do.
 2              THE REPORTER:  Thank you.
 3   SHERRYL ELY, having been duly sworn, was examined
 4   and testified as follows:
 5   EXAMINATION
 6   BY MR. HACKE:
 7        Q.   Please state your full name for the Record
 8   spelling your first, middle, and last names.
 9        A.   Sherryl Ann Ely.  S-h-e-r-r-y-l A-n-n E-l-
10   y.
11        Q.   Okay.  In preparation for this deposition,
12   did you review facts or utilize documents that have
13   not been disclosed to the plaintiffs?
14        A.   No.
15        Q.   Have you talked to anyone other than your
16   attorney about this case?
17        A.   I have not.
18        Q.   Okay.  Please state your role for the
19   district.
20        A.   I am the chief finance and operations
21   manger.
22        Q.   How long have you been in that role?
23        A.   I have been that role for approximately 12
24   years.
25        Q.   How did you get into that role?
```



1  had made, but it was something that was coming
2  before the legislature that -- that they were
3  concerned about and were wanting to make their
4  position known as well as supporting the positions
5  of others who believed the same that they did.
6      Q.    Please -- please describe why you
7  recommended that the plaintiffs be fired.
8      A.    My main reason for recommending
9  termination was really twofold.  One -- well,
10 actually it was threefold.
11           One, they used the district time and
12 equipment to work on the I Resolve campaign or
13 project; so it was working on the video as well as
14 crafting some documents.  And there were just a
15 couple of emails that they had done that were
16 related to that.
17           And then two, in discussing or in -- in
18 making my decision -- so part of that process is
19 that they have the chance to come and talk to me
20 when I make a recommendation, when any administrator
21 makes a recommendation for termination.
22           One of the due process things afforded to
23 them is that they can talk to that person.  Neither
24 one of them wanted to speak with me about that.
25           In my opinion, that was unfortunate



1  because I would have liked to talk to both of the
2  ladies about what they had done and why they had
3  done it. And then my third reason was because they
4  are both probatinary.
5    Q.  Okay.  So you said there was only a couple
6  of emails, correct?
7    A.  Right.
8    Q.  Would you say that that's de minimis?
9    MS. VICKERS:  Object to the form.
10    THE WITNESS:  In my opinion, no, it was
11  not de minimis.
12  BY MR. HACKE:
13    Q.  Why is only a couple of emails not de
14  minimis?
15    A.  Just because of the time that they had to
16  have spent on -- on the emails that I reviewed as
17  part of the process.
18    Q.  How much time would you estimate that they
19  spent on those emails?
20    A.  I don't -- I couldn't estimate that.
21    Q.  How long -- how long were these emails?
22    A.  Some of them were, in my opinion, for an
23  email extensive when I consider what I usually put
24  in an email and the -- and the work that they were
25  -- were doing through email.



NAEGELI DEPOSITION & TRIAL    (800)528-3335    NAEGELIUSA.COM

```
 1      Q.   So was that the only use of -- of
 2 equipment that they did that you found?
 3      A.   No.  I believe that they were using some,
 4 like, you know, paper, material, copies, that kind
 5 of thing as part of the process.
 6      Q.   How -- about how much of paper were they
 7 using?
 8      A.   I could not tell you off the top of my
 9 head. I would have to go back to the report to
10 review that.
11      Q.   Okay.  Don't a lot of people at the --
12 throughout the district, you know, print things off
13 on computers that are not work related?
14      A.   Not to my knowledge they don't.
15      Q.   Okay.  So do you still hold to your
16 recommendation?
17      A.   Yes, I do.
18      Q.   Why?
19      A.   So I will go back to my reasoning for
20 recommending termination in the beginning.  The lack
21 of either one of the ladies to want to have a
22 discussion with me about what they did and not
23 wanting to take responsibility for what they did in
24 using district time and equipment to work on the
25 project.
```



```
 1  going back and checking.
 2      Q.   Were all of those submitted to the
 3  plaintiffs during discovery?
 4      A.   Yes, any emails that we received would
 5  have been submitted.
 6      Q.   Okay.  In your estimation, how many phone
 7  calls did the district office field between the end
 8  of spring break 2021 and the plaintiffs being placed
 9  on leave during or regarding the I -- I Resolve
10  video?
11      A.   I want to say that there were about 50,
12  but I would have to go back and -- and count that
13  just to be sure.
14      Q.   Okay.  Was a complete and accurate record
15  of these calls submitted to the plaintiffs during
16  discovery?
17      A.   To my knowledge, yes, they were.
18      Q.   In your estimation, how many phone calls
19  came in after the plaintiffs were put on leave?
20      A.   I -- I don't recall without going back and
21  checking.
22      Q.   Okay.  Were a complete and accurate record
23  of these calls submitted to the plaintiffs during
24  discovery?
25      A.   Yes, they would have been.
```



```
 1       Q.    Have there been student demonstrations
 2   arising from I -- the I Resolve video or the
 3   employment status of the plaintiffs?
 4       A.    Yes.
 5       Q.    Okay.  How have those been handled by the
 6   district office?
 7       A.    The way we handle any kind of student
 8   demonstration and so students are allowed to
 9   peacefully protest, but it has to be within a time
10   frame.
11             They can't just protest for an entire day
12   and so it's usually encompasses a class period that
13   they are allowed to protest.  And so we would tell
14   the students that they had to go back to class, and
15   if students didn't follow what they were asked to
16   do, then there would be disciplinary consequences
17   for that.
18       Q.    Have there been other student
19   demonstrations this school year not related to I
20   Resolve or the plaintiffs?
21       A.    Yes.
22       Q.    How were those handled differently from
23   those about I Resolve?
24       A.    They were handled the same.
25       Q.    In the -- in the last demonstration, were
```



CERTIFICATE

I, Lee Anne McAdam, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 21st day of June, 2022.

_____
Lee Anne McAdam